## City of Owensboro et al. v. Board of Trustees, City of Owensboro

## Employees Pension Fund, et al.

Dec. 7, 1945.

114

John F. Wood for appellants.

R. Miller Holland for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming in part, reversing in part.

The City of Owensboro, hereinafter referred to as City, became a city of the second class on June 12, 1944. Prior thereto, and throughout all times mentioned herein, it was a city of the third class, operating under the Commission form of government.

On May 23, 1939, and pursuant to sections 90.300 to 90.990, KRS, the City enacted an ordinance, putting into effect Civil Service for all the departments except the police and fire departments, which two departments were already under Civil Service under a separate act. The statute, commonly known and referred to as a Civil Service Act for Municipal Corporations, was followed with particularity. It created a Pension Fund, provided for the acceptance from the City employees of a portion of their wages for the Pension Fund; provided that the City make contributions to the City Employees Pension Fund for each employee making a contribution under the ordinance, and set up a Board of Trustees to handle the fund. The ordinance became effective on May 31, 1939. The City Commissioners who adopted the ordinance went out of office on December 31, 1939. The newly elected commissioners at once undertook to repeal the Civil Service Ordinance. Final passage and

approval was given on January 8, 1940, and the repeal ordinance became effective on that date.

From the repeal date to June 22, 1941, the Board of Commissioners employed and discharged its employees without regard to the provisions of the Civil Service Ordinance, thereby treating it as repealed. However, those who remained with the City under their old employment continued to make contributions to the Pension Fund and the City continued to supplement that fund from its treasury.

On June 23, 1941, the Board of Commissioners adopted the following resolution: "It was moved by Mayor Smith, seconded by Commissioner Meredith, that the City Attorney be requested to prepare an ordinance rescinding the ordinance passed on January 8, 1940, abolishing civil service so that those who have been employed since that time will be under civil service."

After June 23, 1941, the Board of Commissioners employed some of its employees after they had passed an examination given by the former Civil Service Commission, and employed others without the requirement of an examination. Attempts were made to place some of the new employees under the provisions of the Civil Service Ordinance, while no attempt was made to place other employees under the ordinance. It appears that in some instances the Civil Service Ordinance was treated as if it were in existence and in others action was had without any reference whatsoever to it.

On November 17, 1941, final reading and approval was given to an ordinance to abolish and repeal the repeal ordinance of January 8, 1940. Thereafter the Board of Commissioners attempted to place some employees under the Civil Service Ordinance who had been employed since January 8, 1940, the date the original Civil Service Ordinance was repealed, and some others were employed without any regard to any of the provisions of the Civil Service Ordinance.

On the 21st day of November, 1944, the City of Owensboro, through its Mayor, Fred L. Weir, and the Commissioners, W. T. Young and Glenn Lovern, being in doubt as to the status of city employees under conflicting ordinances, observance and non-observance of Civil Service, filed this suit seeking a declaration of their

rights.   Only the Board of Trustees of the City of Owensboro Employees Pension Fund, and Arthur Bollington, Elmer Smith and Earl Patton, the members of the board, were made defendants.

General demurrer to the petition was promptly filed by the defendants, but being of the opinion that some of the pertinent legal questions could not be determined under the existing state of the record, they filed answer in which they alleged that since the defendants, Arthur Bollington, Elmer Smith, and Earl Patton, were employed by the City prior to the enactment of the Civil Service Ordinance, they should be given the right to defend for not only themselves but for all other employees similarly situated.   They alleged further that Bruce Tippin was a necessary party to the suit, having been employed on July 19, 1940, which was after the repeal of the ordinance, and that he ought to be permitted to defend for himself and for all other employees similarly situated; that Mrs. L. T. Chambers was a necessary party since she was employed subsequent to November 17, 1941, the date of the repeal of the repealing ordinance, and, consequently, she ought to be permitted to defend for herself and for all employees similarly situated.

The plaintiffs filed demurrers to each one of the eight separate numbered paragraphs of the answer. The court overruled each one of the demurrers, and being of the opinion that the demurrers searched the entire record, they were carried back to the petition, and the defendants' demurrer to the petition was sustained. The plaintiffs declining to plead further, the petition was dismissed and the rights of the respective parties declared in substance as follows:   That the employees in the classified service who were employed prior to the repeal of the Civil Service Ordinance have an inviolable contract under the terms of their Civil Service employment; that Bruce Tippin and Mrs. L. T. Chambers be permitted to defend the action for and on behalf of all City employees similarly situated to each of them respectively; that the repeal of the repealing ordinance operated to revive the original Civil Service Ordinance, reinstated it in full force and effect, operated to place under Civil Service all of the employees of the City who had been employed since January 8, 1940; that all of the employees in the classified service since January 8,

1940, are unaffected by the attempted repeal of the repealer and have an inviolable contract with the City under the terms of Civil Service employment; that the City recognized the existence and operation of the original Civil Service Ordinance and treated the employees of the City as though it were in full force and effect, and are now estopped from questioning the Civil Service status of all employees employed subsequent to January 8, 1940; that the Trustees of the Pension Fund are fully authorized and empowered to receive contributions from all the employees who are within the classified service and that the Trustees are fully authorized and empowered to administer the Pension Fund for and on behalf of all the employees of the City within the classified service in accordance with the Civil Service statute and ordinance. From this judgment plaintiffs appeal.

Two issues are presented here, namely: (1) Did the ordinance of November 17, 1941, repealing the repeal ordinance of January 8, 1940, revive the original Civil Service Ordinance of May 31, 1939? (2) Is the City estopped to question or deny the operation of the Civil Service Ordinance because of the conduct and attitude toward the employees and the Civil Service Ordinance?

The serious question confronting us is that involved under number (1). If the appellants are correct in their contention that the repeal of a repealing ordinance does not revive the original, the second contention will present little difficulty.

McQuillin, Municipal Corporation, 2d Ed., Revised Volume 2, p. 880, sets out the general rule as follows: ''The general rule is that the repeal of a repealing act restores the law as it was before the passage of the latter act, without formal words for that purpose, unless otherwise provided either in the repealing act or by some general statute.''

The appellants contend that the common law rule, as above set out, was modified by KRS 446.100, which reads as follows:

''Effect of repeal of repealer.

''When a law that has repealed a former law is repealed, the former law shall not be revived unless the

law repealing it is passed during the same session of the General Assembly which enacted the second repeal.''

They further contend that city ordinances are included in the provisions of the above legislative enactment.

The appellees contend that the above section of the statute has no application to ordinances and that the Legislature had in mind its own acts exclusively when it enacted same.

In the disposition of this matter we are confronted with the question of whether or not the above statute is broad enough to include an ordinance of a city or is limited in its application to acts alone of the General Assembly. It appears that this precise question has never been presented to this court. Since we have no prior adjudication in this jurisdiction to guide us, it becomes necessary to analyze the situation in the light of reason. To begin with, is it reasonable or plausible to treat municipal ordinances as statutory law?

In Federal Trust Co. v. East Hartford Fire Dist,. 2 Cir., 283 F. 95, 96, it is held: ''Any law directly passed by the Legislature of a state, and any enactment to which a state gives the force of law, is a 'statute of the state.' ''

In Reinman v. City of Little Rock, Ark., 237 U. S. 171, 35 S. Ct. 511, 59 L. Ed. 900, it was held: ''A municipal ordinance which is within the scope of the powers conferred by the state legislature upon the municipality is a statute of the state within the meaning of the Judicial Code, * * *.''

In Atlantic Coast Line R. Co. v. City of Goldsboro, N. C., 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721, it was held: ''Any enactment, from whatever source originating, to which a state gives the force of law, is a statute of the state, * * *.''

Substantially the same thing was held in New Orleans Water-Works Co. v. Louisiana Sugar Refining Co., 125 U. S. 18, 8 S. Ct. 741, 31 L. Ed. 607.

The municipality gets its authority and power under legislative enactment. The authority to adopt a Civil Service Ordinance emanated directly from the state. The legislative enactment authorizing and empowering

the City to adopt the Civil Service Ordinance was followed precisely. We must recognize the fundamental rule that a municipal corporation, in the exercise of its legislative powers, cannot enact any ordinance violative of the Constitutions of either the United States or the State, and, likewise, an ordinance enacted pursuant to a statute cannot violate the statutory law of the state. That municipal ordinances stand inferior to, and are subordinate to the laws of the state, is a basic principle. We have held that the repeal of a statute under which an ordinance was enacted impliedly repeals the ordinance. See City of Morganfield v. Leo Wathan Drug Co., 202 Ky. 641, 261 S. W. 12. It appears to us that it would be a position of inconsistency to say that a municipality acting under derivative authority can do what the granting authority can not do. Especially is this so, when that which is done is inconsistent with and violative of what the granting authority can do. The Legislature can, only by appropriate re-enactment, revive a repealed statute except it be done at the same session.

We are, therefore, of the opinion that the section of the statute above is broad, comprehensive and inclusive, and is limited in its application to the General Assembly only in the exception therein. To hold that the original repeal ordinance was partially operative and partially inoperative would be taking the rather ridiculous position of treating it as partially suspended and partially repealed. Definitely, the ordinance of January 8, 1940, repealed the Civil Service Ordinance. There can be no argument but that the term repeal is synonymous with abolish, rescind, and annul. Consequently, the repealing ordinance annulled, abrogated, and put an end to the Civil Service Ordinance. It must be admitted, however, that the repeal of it, pursuant to KRS 446.110, did not and could not affect the vested rights and the inviolable contract of the employees who became such, and qualified under the Civil Service Ordinance within its operative life.

The appellees contend that the passage of the resolution above declared the intent and purpose of the repealing body. The distinction between the functions of an ordinance and a resolution not adopted as an ordinance is obvious. A resolution is ordinarily ministerial and temporary in character, while an ordinance

prescribes a permanent rule of conduct and is the mode of expressing the legislative acts of the municipality. The resolution may have been an expression of intendment, but in order to become effectual, it must have been expressed by legislative enactment, that is, by ordinance. We, therefore, conclude that the repeal of the repealing ordinance, in the absence of an accompanying or subsequent re-enactment of the Civil Service Ordinance, was fruitless and inefficacious, and in no way operated to revive the original ordinance.

This brings us to the question of estoppel as against the City because of its conduct toward the employees and its attitude toward, and recognition of, the force of the Civil Service Ordinance as respects the employees who were employed after the repeal of the ordinance. Our courts have held specifically that any statute or ordinance passed in contravention of the Constitution is without force or effect, and any action had or taken under such ordinance is a nullity, and that from a nullity no rights can arise and by it no rights are affected. See City of Henderson v. Lieber's Ex'r, 175 Ky. 15, 192 S. W. 830, 9 A. L. R. 620. Can we say less about those who in this case are claiming under an ordinance that was not in existence?

There was no authority conferred upon the officers of the municipality after the repeal of the Civil Service Ordinance to place anyone under Civil Service. Consequently, the defendants, Bruce Tippin, and Mrs. L. T. Chambers, individually, and other employees similarly situated, could possibly have no vested rights as under a Civil Service Ordinance, which was nonexistent. It, therefore, follows that the court below should have sustained the demurrer of the plaintiffs' to all paragraphs of the answer except the paragraph affecting the Trustees and others similarly situated with them. The court correctly declared their rights. Otherwise, the judgment is reversed, with directions to sustain the plaintiff's demurrer, with the above exception.