MORROW v. CITY OF LOUISVILLE et al.

Court of Appeals of Kentucky.

June 13, 1952.

Wilbur Fields, Louisville, for appellant.

Frank W. Burke, Gilbert Burnett, Louisville, for appellees.

Percy Brown, Jr., Charles A. Robertson, Ogden, Galphin & Abell, Louisville, amicus curiae.

CULLEN, Commissioner.

In an action against the City of Louisville and its mayor and board of aldermen, Floyd D. Morrow, a resident and taxpayer of the city, attacked the validity of an ordinance and a resolution of the board of aldermen having to do with daylight saving time, and sought an injunction to restrain the defendants from "doing any official act in furtherance of the purposes" set forth in the resolution. A demurrer to the petition was sustained and the petition was dismissed. Morrow has appealed from the judgment dismissing the petition.

Morrow's action is predicated upon an Act of the 1952 General Assembly (chapter 113 of the Acts of 1952), which provides as follows:

"The standard time fixed and prescribed for the Commonwealth of Kentucky by Act of Congress or by order of the Interstate Commerce Commission shall apply to and govern all laws, regulations and rules relating to the time of performance of any act by any officer or department of the Commonwealth, or of any county, city, or subdivision or agency thereof, or relating to the time that any right shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the Commonwealth, and in all the public schools and institutions of the Commonwealth and on the public works of the Commonwealth or any county, city or district thereof, or in all contracts or choses in action made or to be performed in the Commonwealth."

The 1952 Act repealed a 1950 Act (chapter 195 of the Acts of 1950; KRS 2.150) which had authorized the adoption of daylight saving time by cities of the population class of Louisville.

The effective date of the 1952 Act is June 19, 1952.

In August 1950, Louisville had adopted an ordinance providing that daylight saving time should be the official time in the city, each year, from the last Sunday in April until the last Sunday in September. Under that ordinance, daylight saving time was scheduled to begin, in 1952, on April 27, but by reason of the 1952 Act of the Legislature, the ordinance would become inoperative, and official daylight saving time would end, on June 19, the effective date of the Act.

Being aware that official daylight saving time must end on June 19, the board of aldermen of Louisville, on April 21, 1952, adopted a resolution which recited the circumstances with reference to the 1950 ordinance and the 1952 legislative Act, and which resolved as follows:

"Section 1. That the Board of Aldermen recommends and urges all citizens of the City of Louisville, churches, business and commercial establishments, theatres, factories and all other persons, firms and corporations to regulate and adjust their hours of business and employment to one hour earlier than usual during the period from June 19, 1952 to 2:00 o'clock a. m., on the last Sunday in September 1952, so that the system of time in the City from June 19 to the last Sunday in September at 2:00 a. m., shall conform as nearly as it may do under the law to the system of Daylight Saving Time which will be in effect from 2:00 a. m., on the last Sunday of April 1952 until June 19, 1952; and that in each year hereafter this voluntary advancement of one hour over Central Standard Time be in effect in the City from 2:00 a. m., on the last Sunday in April until 2:00 a. m., on the last Sunday in September; and that in order to avoid confusion and to promote the orderly conduct of business the aforementioned citizens of the City of Louisville, churches, business and commercial establishments, theatres, factories and all other persons, firms and corporations advance their clocks by one hour during this period.

"Section 2. Nothing herein contained shall be construed as authorizing, recommending or urging that any person, firm or corporation do, or omit to do any act with reference to the system of time in conflict with the provisions of the aforementioned House Bill No. 36 after the effective date thereof, viz. June 19, 1952."

█ In his action, which was filed on April 15, 1952, Morrow attacked both the 1950 ordinance and the 1952 resolution. His claim that the 1950 ordinance was inoperative was based on the ground that the ordinance had not been published in a compilation of ordinances as required by KRS 83.100. This question now is moot, because it is admitted by all parties that the ordinance will become inoperative on June 19, prior to the effective date of this opinion. This leaves us with the questions of whether the 1952 resolution is invalid, and whether the plaintiff is entitled to enjoin the mayor and board of aldermen from doing any official act in furtherance of the purposes of the resolution.

Morrow's petition attacks the resolution on the grounds that its adoption amounted to a violation of the official oath of the members of the board of aldermen to uphold the law and the Constitution; the purpose of the resolution is to bring about mass disobedience, by the people, of the law of the state; the resolution will corrupt the morals of the school children and citizens of the city; and it will cause "widespread confusion".

█ We are unable to find, in the grounds relied upon by Morrow, any basis for holding the resolution invalid. Running throughout Morrow's contentions is the concept that the resolution conflicts with the state law. A similar contention was made before the Supreme Court of the United States in Massachusetts State Grange v. Benton, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387, concerning a Massachusetts statute which provided for daylight saving time for official actions under state law, allegedly in conflict with a Federal statute fixing standard time for official actions under Federal law. The Supreme Court found no conflict between the statutes.

Here the statute applies to official actions and actions regulated or governed by state law, while the resolution specifically applies only to private activities outside the scope of the statute. The resolution does not conflict with the statute.

If the action which the resolution recommends and urges does not constitute a violation of the state law, then it cannot be said that the aldermen violated their oaths of office in adopting the resolution, or that it encourages "mass disobedience" to the state law, or that it will corrupt the morals of the citizens.

Even if it should be conceded that the resolution does urge people to violate the state law, we do not see how a judgment of a court, declaring the resolution to be invalid on that ground, would accomplish anything. Such a judgment would amount to nothing more than an expression of opin-

724

ion by the court that the board of aldermen should not have adopted the resolution. The action before us is one for a "binding" declaration of rights, and certainly a declaration that the resolution is bad in principle and therefore invalid would not bind anything or anybody because the resolution itself does not bind anything or anybody.

The resolution does not have the effect or status of a law, but is nothing more than an expression of intent or purpose. City of Owensboro v. Board of Trustees, 301 Ky. 113, 190 S.W.2d 1005.

Morrow's petition seeks an injunction against the mayor and board of aldermen on the ground that, unless restrained, they "will" make regulations or pass ordinances the effect of which will be to force observance of daylight saving time. It is alleged that the mayor intends to change the parking hours and other traffic regulations, and that the board of aldermen will change ordinances in which time is a factor, such as the ordinances regulating the hours of liquor establishments and pawnbrokers, the hours during which the streets may be used for delivery of milk or farm produce, and the time for holding meetings of the board of aldermen. A blanket injunction is sought against the doing of any official acts in furtherance of daylight saving time.

It is axiomatic that injunctive relief will not be granted unless the plaintiff shows that he will suffer great and irreparable injury for which he has no adequate remedy at law. Although Morrow, suing as a "resident and taxpayer," alleges that he and others similarly situated will suffer great and irreparable injury from the threatened actions of the city officials, he does not allege in what respect he or any other citizen will suffer injury. He does not allege any prospective damage to his property or his person, or any deprivation of his liberty. He alleges only corruption of morals and confusion. In Massachusetts State Grange v. Benton, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387, similar allegations were held not sufficient to require injunctive relief.

If the mayor or board of aldermen should take action in the future which can be shown to be in violation of the state statute as to time, then anyone who can show injury or threatened injury as a result of that action will find relief in the courts. But we cannot issue a "shotgun" injunction barring the city officials from changing regulations or ordinances merely because some citizen fears that the officials will be prompted by an evil motive in making the change.

It is a well established rule that, after legislative action has been taken, the courts will not inquire into the motives that impelled the action. Louisville & Jefferson County M. S. D. v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122, 4 A. L.R.2d 588. How then can the courts inquire into motives *before* legislative action is taken?

It is an equally well established rule that the courts will not undertake to enjoin a legislative body (including a city council) from passing legislation. Kerr v. City of Louisville, 271 Ky. 335, 11 S.W.2d 1046.

As far as the mayor is concerned, the petition alleges only that he will change the traffic regulations. We will take judicial notice, under KRS 83.080, that the mayor of Louisville has no power, under the ordinances of the city, to change traffic regulations.

We find not only that the plaintiff has not shown himself entitled to injunctive relief, but that the kind of action he seeks to have enjoined is beyond the scope of injunctive relief.

The judgment is affirmed.