Norman R. HOPWOOD et al., Appellants,

v.

CITY OF PADUCAH, Kentucky et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 9, 1968.

William E. Scent, David R. Reed, Paducah, for appellants.

H. Warren Middleton, Earle T. Shoup, Paducah, for appellees.

Charles J. Schear, Newport, amicus curiae atty. for Ky. State Lodge Fraternal Order of Police.

PALMORE, Judge.

Paducah is a city of the second class. KRS 81.010. Its police and firemen are

under the civil service protection of KRS 95.440 et seq. KRS 95.495 limits the hours of work for policemen to eight hours per day for five days each week except in the event of emergency. In April of 1966 the city legislative body enacted an ordinance providing in substance that from and after June 1, 1966, no member of the police department would be permitted to engage in any other occupation or employment for more than four hours during any work day, nor more than 16 hours within the five working days of any week. Members of the police department, some of whom were and are regularly engaged in "outside work" exceeding the prescribed limits, brought suit against the city challenging the validity of the ordinance. The circuit court held it valid and sustained a motion to dismiss the action. This appeal followed.

The complaint alleged that disciplinary action would be inflicted for violation of the ordinance, and it sought injunctive relief and a declaration of rights. The grounds on which the ordinance is claimed to be invalid are that it violates Const. §§ 1, 2 and 19 and conflicts with various sections of KRS Chapter 95 beginning with KRS 95.430.

The constitutional objections are that the ordinance deprives the members of the police department of the rights to enjoy life and liberty and to acquire and protect property (Const. § 1), is arbitrary and unreasonable (Const. § 2), and impairs their vested rights (Const. § 19). Corollary to the § 19 argument they contend also that the ordinance is an *ex post facto* law in violation of KRS 446.110.

The statutory objections have been reduced to one point, that the ordinance is not an authorized "rule" within the meaning of KRS 95.450(1), which prohibits disciplinary action, other than temporary suspension, "for any reason except inefficiency, misconduct, insubordination or violation of law *or of the rules adopted by the city legislative body,*" etc. (Emphasis added.) Drawing an analogy to the rule of

*ejusdem generis,* the appellants contend that in regard to off-duty activities the rule-making authority of the city is confined to the areas of "inefficiency, misconduct, insubordination or violation of law."

■ With respect to this latter argument, it will be noted that the statute enumerates five grounds for disciplinary action. It says nothing about on-duty and off-duty hours, and there is nothing in its terminology to suggest that four of these grounds apply around the clock but the fifth can apply only to on-duty conduct. If that is the effect, it must result from some reason or principle to be found outside the statute. KRS 95.430(2) empowers the city legislative body to ordain and enforce such "rules for the government of the departments as it may deem expedient." KRS 95.440(4) and 95.470(2) make comparable references to "rules of the department." We construe the statutes as authorizing the legislative body to prescribe rules and regulations that are not unlawful, and we find no statutory law that makes the ordinance in question unlawful.

■ To the extent that punitive actions may result from violation of the ordinance there can be no problem of an *ex post facto* effect. City of Louisville v. Thompson, Ky., 339 S.W.2d 869, 873 (1960). KRS 446.110 simply is not involved. However, the possibility that the ordinance may impair vested rights presents a more serious question.

In holding that there is nothing fundamentally unsound about an "anti-moonlighting" ordinance the Superior Court of New Jersey dismissed the vested rights argument with such comments, all documented by case law of that state, as follows: "From early times our courts have declared that a police officer holds an office, and that a contractual relation does not exist between a municipality and its police officers. * * * A policeman is a public officer concerned with the administration of public duties. * * * There is

no property right in a public office. * * Hence plaintiffs have no vested rights or contractual obligations that might be impaired." Isola v. Borough of Belmar, 34 N.J.Super. 544, 112 A.2d 738, 744 (1955).

We cannot travel that path. In this state a civil service or similar job status is regarded as a vested right or, at least, is given the same protection as if it were. Thus in City of Owensboro v. Board of Trustees, 301 Ky. 113, 190 S.W.2d 1005, 1008 (1945), in which the city had repealed a civil service ordinance the court said, "It must be admitted * * * that the repeal of it * * * did not and could not affect the vested rights and the inviolable contract of the employees who became such, and qualified under the Civil Service Ordinance within its operative life."

■ The question we have to face is not whether the appellants have "vested rights," but whether the ordinance unlawfully impairs their rights. Cf. Const. § 19.

■■ As we have seen, the statutes expressly contemplate the promulgation of rules and regulations by the city legislative body and by the police department itself. Even without this explicit statutory recognition, it would hardly be suggested that an employe entering a civil service status could not be affected by future regulations relating to personnel and operations. Any way this problem is approached, the answer must lie in whether the particular regulation is so unreasonable as to be arbitrary (cf. Const. § 2), and in this context it is not the province of a court to judge the wisdom of the regulatory authority. Our concern is whether it has exceeded its power.

The courts of those states in which the question has arisen have quite uniformly held this type of governmental action to be reasonable and valid. "While we have not made an exhaustive study of the legislation and ordinances of other states, we find that similar limitations upon the outside activities of public employes are relatively common. The plaintiffs have not cited, nor

have we found, a case in which such a statute or ordinance has been stricken on constitutional grounds." Croft v. Lambert, 228 Or. 76, 357 P.2d 513, 518, 88 A.L.R.2d 1227, 1234 (1960). As the subject is fully discussed in an annotation at 88 A.L.R.2d 1235 we shall not attempt a cross-country review of the decisions here. In some instances ordinances or regulations prohibiting any outside employment whatever have been upheld. Cf. Croft v. Lambert, supra. According to the general rule, "regulations forbidding or regulating outside occupations of policemen or firemen have usually been sustained as valid, the courts generally taking the view that the duties of such officers are peculiarly connected with the public health and safety, so that it is particularly important that they not be subject to outside interests which might conflict with their official duties by diluting their energies, occupying time during which they are at least potentially on call, or involving themselves in situations where they might be motivated to neglect or subvert their official functions." Annotation, 88 A.L.R.2d 1235.

■ What we have said disposes directly of all of the constitutional and statutory points except for Const. § 1. The ordinance certainly does not impair any of the rights vouchsafed by that section. It does restrict, by placing certain limitations upon, the right of the appellants to serve as policemen for the City of Paducah, and we hold that these limitations are not unlawful. But it neither forces them to serve nor prohibits them from doing whatever they wish to do if they choose not to serve.

We are not blind to the economic facts that give rise to the widespread practice of moonlighting by police and firemen. The Court of Appeals of New York in Flood v. Kennedy; 12 N.Y.2d 345, 239 N.Y.S.2d 665, 190 N.E.2d 13, 15 (1963), suggested that "the remedy is not by removing necessary controls but by providing more adequate compensation." History is replete with the frequent treks of police and firemen to the state legislature seeking and often gaining

statutory regulation of hours and wages. This is a natural course of events when municipal government is financially shackled, and it provides some insight into the much-bewailed shift of government from the local to state and national levels. Wherever the answer to the problem is to be found, it is not in the courts but in the legislative arm of the city or the state.

■ One other point made by the appellants is that because they sought a declaration of rights the judgment should have declared their rights instead of dismissing the complaint. Cf. Clay's Kentucky Practice, CR 57, Comment 3. (Vol. 7, p. 190). Technically that is so, but under the circumstances of this particular case we do not perceive what practical difference it would make.

The judgment is affirmed.

All concur.