

# The Attorney General of Texas

January 27, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Gibson D. Lewis, Chairman
Natural Resources Commission
House of Representatives
Capitol Station 2910
Austin, Texas 78767

Honorable Hal H. Hood, Commissioner
Firemen's Pension Commission
503-F Sam Houston State Office Bldg.
Austin, Texas 78701

Honorable Joe Resweber
Harris County Attorney
Houston, Texas 77002

Opinion No. H-1122

Re: Retirement programs for volunteer firemen.

Gentlemen:

You have requested our opinion regarding a number of provisions of Senate Bill 411, Acts 1977, 65th Leg., ch. 269, at 710, codified as article 6243e. 3, V.T.C.S., which creates a Fire Fighters Relief and Retirement Fund to provide benefits for volunteer firemen. Section 2 of the statute provides in pertinent part:

> (b) Participation in the fund is optional. Any governing body may, not later than 60 days after the effective date of this Act and in accordance with the usual procedures prescribed for other official actions of the governing body, elect to exempt itself from the requirements of this Act. Any action to provide for an exemption from the requirements of this Act may be rescinded by the governing body at any time.

> (c) Every governing body shall contribute for each fire fighter at least $12 for each month of qualified service beginning on the date the fire fighter enters the pension system. Contributions must be paid at least every six months. If the member fire department is situated in more than one political subdivision, the governing bodies of such political subdivisions shall

p. 4583

contribute equally towards a total of at least $12 for each fire fighter for each month of qualified service.

"Governing body" is defined as

the governing body of any political subdivision of the state within which a rural fire prevention district created pursuant to the provisions of Chapter 57, Acts of the 55th Legislature, Regular Session, 1957 (Article 2351a—6, Vernon's Texas Civil Statutes), is situated or the governing body of any city or town within which a fire department subject to the provisions of this Act is situated.

Sec. 1 (13). "Qualified service" is defined as

fire-fighting service rendered without monetary remuneration while a member in good standing of a fire-fighting unit that has no fewer than 10 active members, and a minimum of two drills each month, each drill two hours long, and each active member present at 60 percent of the drills and 25 percent of the fires, or fire-fighting service rendered without monetary remuneration while a member of a fire-fighting unit which includes paid fire fighters. Absence caused by military duty does not affect qualified service.

Sec. 1 (1).

You first ask whether a city which elects to exempt itself from the operation of Senate Bill 411 is required to create a retirement system for its volunteer firemen under article 6243e, V.T.C.S. The latter statute authorizes every incorporated city with a regularly organized active fire department to establish a firemen's retirement fund. You state that retirement funds have been created for a number of volunteer fire departments under article 6243e, wherein members contribute three to five dollars per year.

Section 15(a) of Senate Bill 411 requires that

[e]very fire fighter in the state who serves without monetary remuneration be a member of a solvent pension plan.

In our opinion, this provision is to be construed as subordinate to section 2(b), which permits a governing body to "exempt itself from the requirements of this Act." If a

city so elects, we believe our courts would hold that the exemption is applicable to the entire statute, including section 15(a). In our opinion, therefore, a city which votes to exempt itself from the operation of Senate Bill 411 is not required by section 15(a) thereof to create a retirement system for its volunteer firemen under article 6243e.

You next ask whether members of a volunteer fire department which fails to conduct two two-hour drills per month, or members who fail to attend 60 percent of the drills and 25 percent of the fires, qualify for membership in the Fund. The definition of "qualified service" authorizes a city to make contributions only for service performed in accordance with the above-listed standards. A city is not exempt from the provisions of Senate Bill 411, however, merely because its volunteer fire department does not presently meet the criteria required for "qualified service," since the conditions therefor might occur at any time. Such a city, unless it elected to exempt itself under section 2(b), must make contributions during any month in which any volunteer firemen render "qualified service" in accordance with the statute.

Your next question is whether the definition of "qualified service" is applicable to any department having ten or more active members, without regard to whether any members receive compensation. A nonpaid fire fighter renders "qualified service" in one of two ways: he is a member of a unit which contains paid fire fighters; or alternatively, he is a member of an all-volunteer unit and the volunteer unit meets certain standards. If any member of the unit is paid, the requirements attached to the all-volunteer unit are not applicable.

You also ask what constitutes "monetary remuneration" for purposes of the definition of "qualified service." "Monetary" has been defined as

> of or relating to money or to the instrumentalities and organizations by which money is supplied to the economy.

Webster's Third New International Dictionary 1457, 1458 (3d ed. 1967). "Money" generally refers to

> the legal tender, metallic coins or legal tender currency of the United States.

Thompson v. State, 34 S.W. 629, 630 (Tex. Crim. 1896). See Rodgers v. State, 448 S.W.2d 465, 468 (Tex. Crim. 1969). "Money" is equivalent to "cash," and as a rule, it includes checks as well as coin and currency. Baker and Taylor Drilling Co. v. Blanchard Drilling Co., 363 S.W.2d 818, 820 (Tex. Civ. App. — Amarillo 1962, no writ). It does not, however, refer to "any other character of property, real or

personal." Foy v. Clemmons, 365 S.W.2d 384, 386 (Tex. Civ. App. — Dallas 1963, writ ref'd n.r.e.). In our opinion, therefore, "monetary remuneration" includes payment by coin, currency, check or money order, but does not comprehend the furnishing of free water to volunteer firemen by the municipal water system or the furnishing of water at special rates.

Your next series of questions relate to the meaning of "governing body." The Act defines governing body in two ways:  (1) the governing body of any political subdivision within which a rural fire prevention district is located or (2) the governing body of any city or town within which a volunteer fire department is located.  A variety of political subdivisions may come within the first part of this definition.  If a rural fire prevention district is located within a county, for example, the county is the political subdivision to make contributions.  The county may not be the only political subdivision included within the terms of the statute, however.  The Act is applicable to any political subdivision within which a rural fire prevention district is wholly situated.  A school district, for example, constitutes such a political subdivision.  See Lewis v. Independent School District of City of Austin, 161 S.W.2d 450, 452 (Tex. 1942).  If a volunteer fire department exists within that political subdivision, the governing body thereof which has not elected to exempt itself from the Act is required to make contributions on behalf of those members who render "qualified service."  Furthermore, if more than one political subdivision elects to contribute on behalf of the same volunteer fire department, equal contributions are required.

You inquire about the identity of the governing body for a volunteer fire department located within an unincorporated town which itself has no governing body.  Since the second part of the definition of governing body cannot apply in that case, you must look to the first part to determine which political subdivision, if any, is required to make contributions.  The definition of political subdivision turns on the existence of a rural fire prevention district; if the unincorporated town you inquire about is located in a county which has no rural fire prevention district, there is no political subdivision to contribute to the Fund.  In such instances the statute is not applicable.

The county may be the political subdivision required to make contributions if a rural fire prevention district is located within it.  If no rural fire prevention district is located within a particular county, the statute is not applicable to that county.  Where a water district is located within the unincorporated town, the water district may constitute the political subdivision, if a rural fire prevention district is located wholly within it.  If both the county and the water district meet the definition, then both may be required to contribute.  Finally, if the rural fire prevention district is situated within the town you describe, the district is a political subdivision required to contribute by the Act.  See V.T.C.S. art. 2351a-6, S 10.

You also inquire about the effect of a city's rescission of a resolution exemption itself from the terms of Senate Bill 411. Section 2(b) provides that a governing body may "at any time" rescind "any action to provide for an exemption from the requirements of this Act."

In contract law rescission means an "undoing," Adams v. Loftin, 1 S.W.2d 429, 430 (Tex. Civ. App. — El Paso 1927, no writ), and its effect is to restore the status quo prior to the formation of the contract. See Dreiling v. Home State Life Insurance Co., 515 P.2d 757, 766 (Kan. 1973). This definition has been used to interpret a statute that permits rescission of an administrative order. King v. Oakley, 434 P.2d 868, 872 (Okla. 1967); Portland Traction Co. v. Hill, 352 P.2d 552 (Ore. 1960). However, in its more ordinary sense, "rescind" is synonymous with "repeal." Webster's Third New International Dictionary 1924, 1930 (3d ed. 1967); see Rains v. Contra Costa County, 231 P.2d 55, 56 (Cal. 1951); Golconda Lead Mines v. Neill, 350 P.2d 221, 223 (Idaho 1960); City of Owensboro v. Board of Trustees, 190 S.W.2d 1005, 1008 (Ky. 1945).

In our opinion, if a governing body acts to rescind its order exempting itself from the Act, its action will amount to a repeal, which operates prospectively. See Galveston H. & H. R. Co. v. Anderson, 229 S.W. 998, 1001 (Tex. Civ. App. — Galveston 1920, writ ref'd). The governing body will begin making its contributions at the time the rescission becomes effective.

Finally, you ask whether the contributions imposed by Senate Bill 411 are in contravention of article 3, section 52 of the Texas Constitution, where the volunteer fire department is a chartered, private, nonprofit civic corporation. Article 3, section 52(a) forbids the Legislature

> to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation. . . .

As we observed in Attorney General Opinion H-127 (1973),

> [t]he current construction of [article 3, section 52] is that it does not prohibit the Legislature from authorizing a county, city or other political corporation or subdivision to spend its funds with private corporations for the achievement of public purposes. . . .

> It is not unusual for political subdivisions to contract with private corporations to perform services or functions which the governmental unit might have provided itself.

Id. at 4.  Clearly, fire protection constitutes a "public purpose."  Articles 1069 and 1175 (27), V.T.C.S., specifically empower cities to provide for fire protection, and article 2351a-1, V.T.C.S., furnishes authority for counties to do so.  See also V.T.C.S. art. 2351a-5.  See Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960); Attorney General Opinion H-828 (1976).  But cf., Attorney General Opinions H-520 (1975) (county may not contribute public funds to the construction of a livestock barn to be owned and operated by a private, nonprofit organization); H-397 (1974) (county may not become a dues paying member of a chamber of commerce).  In our opinion, the contributions imposed by Senate Bill 411 are in no way violative of article 3, section 52 of the Texas Constitution.

## SUMMARY

A city which elected to exempt itself from the terms of Senate Bill 411 is not required to create a retirement system for its volunteer firemen under article 6243e or any other statute.  A city, unless it exempted itself under section 2(a) of Senate Bill 411, must make contributions to the Fire Fighters Relief and Retirement Fund for any month during which any of its volunteer firemen render "qualified service" in accordance with the statute.  "Monetary remuneration" includes payment by coin, currency, check or money order, but does not embrace the furnishing of free or discounted water.  If a volunteer fire department is not located within a city or town, any political subdivisions within which the department and a rural fire prevention district are wholly situated are required to make contributions to the Fund.  A city which rescinds its resolution of exemption is required to contribute on behalf of every person rendering "qualified service" the sum of twelve dollars per month commencing with the effective date of the rescission order.  The contributions imposed by Senate Bill 411 are not in contravention of article 3, section 52 of the Texas Constitution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

Honorable Gibson D. Lewis
Honorable Hal H. Hood
Honorable Joe Resweber        -        Page 7        (H-1122)


APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst