17170

JACK J. WRIGHT, N. B. BAROODY, JULIAN A. PRICE and BEN DOZIER, Respondents, v. CITY OF FLORENCE, Appellant

(93 S. E. (2d) 215)

*W. H. Caldwell, Esq.,* of Florence, *for Appellant,*

*William H. Blackwell, Esq.,* of Florence, *for Respondents, Jack J. Wright* and *N. B. Baroody,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent, Julian A. Price,*

June 5, 1956.

STUKES, Chief Justice.

Under the recited authority of Section 7546 of the Code of 1942, as amended, the city council of Florence on July 1, 1950, adopted an ordinance whereby a Civil Service Commission was established in the city, conformable to the cited statute, with jurisdiction over the police and fire departments of the city. The statute is now codified as Sections 47-721 to 47-740, both inclusive, of the Code of 1952. Sub-section 7546(11) of the Code of 1942, which appears in substance as section 47-740 of the Code of 1952, follows:

"It is not intended by this section to repeal any existing laws as they may affect municipalities of this State, but to extend and enlarge the powers of such municipalities as may fall within the population limitations of this section,

and as may elect to create such civil service commission by appropriate ordinance."

On December 8, 1955, council enacted an ordinance whereby the civil service ordinance of 1950 was expressly repealed.

Two members of the Civil Service Commission, whose terms of office had not expired, commenced this action against the city, and joined as defendants the chiefs of the police and fire departments, for declaratory judgment of invalidity of the repealing ordinance and for injunction of any act of the city under the authority of it.

It was alleged in the complaint: that the chiefs of the police and fire departments were made defendants individually and as representatives of the employees of the city; the establishment of the Civil Service Commission was in the exercise of an executive, not legislative, power of city council; there is no statutory authority for the repeal of the ordinance establishing the commission; the plaintiffs have a vested right in and to their statutory terms of office; and the attempted abolition of the commission affects the contractual rights of the employees of the city, whereby the attempted repeal of the ordinance of 1950 is void.

In the answer of the city it was claimed that it was authorized by its charter to establish the Civil Service Commission, and the statute is merely permissory; and the legal conclusions contained in the complaint with respect to the repealing ordinance were denied.

The defendant chief of the police department answered, cross-complained and alleged, *inter alia*: that the purpose of the attempted repeal of the ordinance was to discharge him from employment; the repealing ordinance violates the State and Federal constitutions in that it impairs contracts and deprives of property without due process of law; and that the answering defendant and other employees of the police department are entitled to performance by the city

of their respective contracts of employment, which was demanded.

The city answered the cross-complaint of the defendant chief of police, denied that his employment was induced by the 1950 ordinance and asserted that it is not binding upon the present council; and further generally denied the other allegations of the cross-complaint.

The foregoing is a scant summary of the pleadings but is sufficient for discussion and decision of the controlling issue presented by the appeal. The record does not contain any answer of the defendant chief of the fire department.

The controversy was heard by the lower court upon the pleadings, without evidence, and it was held that the attempted repeal of the ordinance whereby the civil service commission was established was invalid. It was concluded that the city could not have under its charter established the Civil Service Commission which the ordinance of 1950 did; the latter is solely referable to the statute which has been cited. It was reasoned that the creative power which gave rise to the commission lay in the statute and that the ordinance of 1950 was an exercise of the council's executive, rather than legislative, function. Conceding that under the statute the adoption of the civil service system was optional with the city, thereafter all of the provisions of the statute became mandatory upon the city and there being no provision in the statute for repeal of the adopting ordinance, it could not be repealed by council. The court expressly declined to decide, quoting from the order, "the question of contractual rights as presented by the cross-complaint of the defendant Julian A. Price (which) does not have to be answered in view of what has been decided.  *  *  *"

The authority of *Hardy v. Reamer*, 84 S. C. 487, 66 S. E. 678, was relied upon by the court for its result. In that case, under Act No. 567 of 1902, 23 Stat. 1050, the City of Columbia was authorized to establish a Board of Police Commissioners, which was done by ordinance. Afterward

it was attempted to repeal the latter. The repeal was held to be invalid because the commission was created by the statute, without any right in the city to abolish; and the Commissioners were said to be officers of the State, which is not contended here with respect to the members of the civil service commission.

The Act of 1902 contained no such provisions as appear in sub-section 7546 (11) of the Code of 1942, which is quoted above. By it the legislature clearly expressed its intention not to inpinge upon any law theretofore affecting municipalities, and, on the contrary, intended, quoting from the statute, "to extend and enlarge the powers of such municipalities." Absent constitutional or statutory inhibition, among the powers of a municipality which existed before enactment of the statute was the power to repeal, by proper ordinance, any prior ordinance. In the early case of *City Council of Charleston v. Wentworth Street Baptist Church*, 1850, 4 Strob. 306, it was said, quoting: "It is plain (that) the power which enacted an ordinance may repeal it, unless the rights or privileges it conferred might be claimed in the nature of contract."

The rule is similarly and more fully stated by McQuillin, Municipal Corporations, 3rd Ed., Volume 6, Sec. 21-10: "Specific grant of power to repeal ordinances, however, ordinarily is not necessary since it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them. It is patently obvious that the effectiveness of any legislative body would be entirely destroyed if the power to amend or repeal its legislative acts were taken away from it." The following is also quoted from the cited section of McQuillin: "The power of repeal extends, generally speaking, to all ordinances. Indeed, a municipal corporation cannot abridge its own legislative powers by the passage of irrevocable ordinances. The members of its legislative body are trustees for the public, and the nature and limited tenure of their office impress the ordinances enacted by them with liability to change. One

council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government. Accordingly, in the absence of a valid provision to the contrary, a municipal council or assembly, having the power to legislate on, or exercise discretionary or regulatory authority over, any given subject may exercise that power at will by enacting or repealing an ordinance in relation to the subject. Thus, the power of repeal extends to legislative enactments and, a fortiori, to ordinances of an administrative character, as, for example, an ordinance fixing the fiscal year of a municipal corporation. The power does not extend, however, to authorize impairment of a contract or deprivation of property without due process of law."

Beside the limitation upon the right of repeal which impairs a contract or deprives one of property without due process of law, or, rather, *the effect of the repeal* (see *infra*), McQuillin notes another exception to the rule of implied power of repeal, which exists where an ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time prescribed by the legislature, which excludes the implication that the city council is given any further jurisdiction over the subject than to do the one act. He expresses it another way, that no power of repeal exists as to an ordinance that constitutes the exercise of municipal power which is exhausted by its single exercise. An example of the latter is *Thompson v. City of Marion*, 1938, 134 Ohio St. 122, 16 N. E. (2d) 208, 210, where the city attempted to repeal an ordinance which set up a police and firemen's pension fund. The statute provided that such a system might be set up by ordinance where the council declared the necessity for it. The court concluded that the rule of implied power of repeal did not apply because the statute expressly limited authority to council to do a certain thing in the manner and within the time fixed by the legislature, and it was said in the opinion: "It [council] had only the power of deter-

mination of the question of necessity and when that was found in the affirmative, its power was exhausted."

Repeal of a city civil service ordinance was upheld in *City of Owensboro v. Board of Trustees, City of Owensboro Employees Pension Fund,* 1945, 301 Ky. 113, 190 S. W. (2d) 1005, 1008. The court said: "Consequently, the repealing ordinance annulled, abrogated, and put an end to the Civil Service Ordinance. It must be admitted, however, that the repeal of it * * * did not and could not affect the vested rights and the inviolable contract of the employees who became such, and qualified under the Civil Service Ordinance within its operative life." In *Stemmler v. Borough of Madison,* 1912, 82 N. J. L. 596, 83 A. 85, there was upheld the repeal of an ordinance providing for the laying out of a street, the cost of rights of way apparently causing abandonment of the project. The repeal ordinance was contested by the plaintiff who had purchased an abutting lot. The court held applicable the rule of implied right of repeal, quoting, "when the ordinance is not a contract, or one that is, from its nature, exhausted by a single exercise."

Reverting to our reports, the case of *Stone v. Mahon,* 88 S. C. 576, 71 S. E. 300, is authority for reversal of the case in hand, and the court expressly said in it that it was not in conflict with *Hardy v. Reamer, supra,* 84 S. C. 487, 66 S. E. 678. There the legislature gave by act permissive authority to the municipality to establish a municipal court (as here a civil service commission) which it did; afterward the court was abolished by passage of an ordinance repealing the ordinance whereby it was established, and the ousted recorder (judge of the court) brought action. The decision is correctly stated in the headnote, as follows: "A city which is vested with power to create a municipal court by ordinance may repeal such ordinance and abolish the court during the term of office of the judge duly elected." The court made a sound distinction between the legislative act there involved, which gave permissory authority for the establishment by ordinance (as also in the case at hand),

and Act No. 566 of 1902, 23 Stat. 1048, which established (not authorized) recorder's courts in cities of a certain population class.

The distinction made in *Stone v. Mahon* exists with equal force in the case at bar when consideration is had of all of the contents of Chapter 7, Civil Service Commissions, Title 47, Municipal Corporations, of the Code of 1952. In art. 1, § 47-701 *et seq.,* applicable to certain cities with commission forms of government, *they shall* establish by ordinance a civil service commission; section 47-709 of this article expressly exempts the city of Florence. Then follows Article 2, § 47-721 *et seq.,* applicable to Florence and with which we are here concerned; it provides that a subject municipality *may* by ordinance provide for a civil service commission. Finally, there are articles 3 and 4, section 47-751 *et seq.* and section 47-781 *et seq.,* applicable to municipalities of other specified population classes, in which there are thereby *created* civil service commissions. The difference is manifest. There is no doubt of the permissory nature of the legislative grant of power to the city of Florence to establish by ordinance its civil service commission; the legislature did not establish—create—it; council, perforce its ordinance, did. It follows that the statute did not prevent council from repealing its former, creative ordinance.

With respect to the plaintiffs, who were members of the Civil Service Commission before abolition of it by the repealing ordinance of 1955 and whose terms of office had not expired, it does not appear to be seriously contended that they have constitutional or contract rights which have been impaired. We conclude upon the record that they do not. They were officers, whose offices have been abolished. The following is from *Stone v. Mahon, supra,* 88 S. C. 576, 579, 71 S. E. 300, 301:

" 'The fact that the effect of this ordinance was to oust the plaintiff from the office, which he held, before the expiration of the term for which he was elected, does not ren-

der this legislation on the part of the city council invalid. The rule is thus concisely stated in Mechem on Public Officers, page 467: "Where the legislature has conferred upon a municipal board the authority to create offices, the board may abolish the offices so created, though the term of the incumbent has not expired." See, also, Cyc. 28, page 401, and Cooley's Constitutional Law, page 332. In the case of *Board of Councilmen of City of Frankfort v. Brawner,* 100 Ky. 166, 37 S. W. 950, at page 951, 38 S. W. 497, the Supreme Court of Kentucky uses this language: "And we know no reason why the municipal legislature that has, in the exercise of discretion given by the General Assembly, established a city office, may not, at will and at its pleasure, abolish it." ' " (Other citations.)

See also the old and interesting case of *Alexander v. McKenzie,* 2 S. C. 81, where the mayor and aldermen of the city of Columbia were effectually legislated out of office; and the recent tangent decision in *Newman v. McCullough,* 212 S. C. 17, 46 S. E. (2d) 252. The following was said in the leading case of *State ex rel. Lyon v. Rhame,* 92 S. C. 455, 75 S. E. 881, 883, concerning state offices, which is analogous to the powers of council over municipal officers whose offices were created by council: "Public offices are created for the benefit of the commonweath, incumbents have no contract or property rights in them, and, unless it be otherwise provided by the Constitution, they are subject entirely to legislative control. Hence, subject to the Constitution, the General Assembly may fix the term, provide for removal, abolish the office, reduce the term, and in every respect control the existence, powers, emoluments, and tenure of public officers."

We quote from 37 Am. Jur. 857, 858, Municipal Corporations, sec. 227: "Ordinarily, in the absence of constitutional or statutory restrictions, when a municipal corporation has power to create an office, it may abolish it. An office created by municipal ordinance may be abolished by ordinance; thereafter the incumbent ceases to be an officer.

Even when an officer by reason of having been appointed for a definite term, or by special statutory provision, cannot be lawfully removed except for cause after full hearing, his office may be summarily abolished whenever the proper municipal authorities deem it advisable. Tenure of office statutes and civil service statutes do not prevent a bona fide abolition of the office by the municipality." There is an annotation on the subject in 172 A. L. R. 1366, with cases relating to cities beginning at page 1383.

The defendant Chief of Police Price, as respondent, ██ submitted sustaining grounds to the effect that his contractual rights had been unconstitutionally impaired by repeal of the ordinance, whereby the repeal was invalid as to him. There are several reasons why the contention cannot be adjudicated in this action. It was not decided by the lower court and is, therefore, not available to him as a ground to sustain the judgment. *Carter v. Peace*, S. C., 93 S. E. (2d) 113. Again, it may depend upon facts, evidence of which was not adduced in this action. Finally, this is not the proper form of action for the adjudication of his claims. The following is from 37 Am. Jur. 834, 835, Municipal Corporations, Sec. 197:

"The fact that the repeal of an ordinance cannot ordinarily be made to affect vested rights or contractual obligations is sometimes spoken of as a restriction on the power to repeal ordinances. It seems, however, that this restriction relates merely to the effect of the repeal. It is not that a city lacks power to repeal its ordinances, but that to the extent that the repeal affects vested rights or contractual obligations it may be inoperative. Even in such a case, however, the court will not ordinarily attempt to control the action of the municipal council, and if the council considers that the public interests require the repeal of an ordinance, in violation of a contract of the municipality, the court will not compel the specific performance of the contract but will leave the injured party to his remedy at law."

Whatever rights Price has in the premises, if any, will not be adjudged in this action, and we intimate no opinion thereabout.

In the view which we have taken, it is unnecessary to consider appellant's position that it was empowered by its charter to establish by ordinance the civil service commission, and thereafter repeal it by ordinance. We hold that the power of repeal was implied, and no provision of the statute prevented it.

The appeal of the city is sustained.

The judgment is reversed and the injunction dissolved.

OXNER, LEGGE and MOSS, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.