

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 22, 1961

Mrs. Marie Hudson
Firemen's Pension Commissioner
1010 State Office Building
Austin, Texas

Opinion No. WW-1066

Re: Authority of a Firemen's
Pension Board to decrease
the pension of firemen who
have been retired at in-
creased amounts.

Dear Mrs. Hudson:

In your letter pertaining to the above subject,
you request the opinion of this office on the question of
whether the Board of Firemen's Relief and Retirement Fund
Trustees of the City of Wichita Falls may decrease the pen-
sions of firemen who have been retired at increased monthly
payments allowed and voted into effect under the alternate
or selective benefit provisions of Section 6 of Article
6243e, Vernon's Civil Statutes, which reads in part as follows:

"Sec. 6. Any person who has been duly
appointed and enrolled and who has attained
the age of fifty-five (55) years, and who
has served actively for a period of twenty
(20) years in any rank, whether as wholly
paid, part-paid or volunteer fireman, in
one (1) or more regularly organized fire
departments in any city or town in this
State having a population of less than five
hundred thousand (500,000) according to the
last preceding Federal Census, which city
or town is now within or may come within
the provisions of this Act, shall be entitled
to be retired from such service or department
and shall be entitled to be paid from the
Firemen's Relief and Retirement Fund of that
city or town, a monthly pension equal to one
half (1/2) of his average monthly salary not
to exceed a maximum of One Hundred Dollars
($100) per month, except as hereinafter pro-
vided; . . . Provided, further, that any

regularly organized 'full paid' fire de-
partment in any city or town in this State
now within or that may come within the pro-
visions of this Act may, upon a majority
vote of said Board of Trustees, increase
the maximum pension to One Hundred and Fifty
Dollars ($150) per month. As amended Acts
1953, 53rd Leg., p. 352, ch. 82, § 1; Acts
1957, 55th Leg., p. 617, ch. 275, § 2."

Your letter reads in part as follows:

"In an effort to protect and preserve their
pension fund the Board has joined with the Fire
Department in voting out certain alternative
increased benefits. . . . Now the Board wants
to know if it is within their authority to de-
crease the pension of persons who have already
been retired at the increased amounts.

"It has been the opinion of this office
that once a man is granted benefits at the
rate in effect at the time of his retirement,
that benefit is set - if increased benefits
are voted into effect the persons on pension
do not have their pension increased and if the
benefits were lowered then the persons on pen-
sion would not be lowered. . . ."

The claim of a vested right of a pensioner to the
continuance of monthly pension payments at the statutory rate
in effect at the time of his retirement was denied in the case
of City of Dallas v. Trammel, 129 Tex. 150, 101 S.W.2d 1009,
(1937). The Court held that such rate was subject to change
by subsequent legislation; that a pensioner's right to continue
to receive monthly payments from the pension fund after retire-
ment was predicated upon anticipated continuance of the then
existing laws and subordinate to the right of the Legislature
to abolish the system or diminish its benefits. It further held
that a contribution to the pension fund under that law did not
give the pensioner a vested right in the pension fund, which
was a public fund subject to control of the Legislature.

Since a pensioner, under the Trammel case, has no vested right to future increased payments, the question to be resolved is whether the Board of Trustees, after exercising the discretionary authority delegated by the Legislature by increasing the maximum pension to $150.00, has the power to subsequently decrease that amount.

The case of Board of Councilmen v. Brawner, 37 S.W. 950 (Ky. Ct. App. 1896) cited in our previous letter to you is also in point on the current question. The Court in that case held that a municipal legislature might abolish a board of public works which it had established under discretionary power conferred by a statute that made no reference to the power to abolish. The Court on rehearing said the following in a Per Curiam opinion reported in 38 S.W. 497:

> "The petition for rehearing in this case is based upon the theory that there is something analogous to contract right in the tenure by which the members of the board of public works of Frankfort hold their offices. There is no such analogy. They do hold, as do persons holding offices created by the legislature, subject to the power of the body which created the office to abolish it. In each case the power is a delegated power. The municipal legislature derives its power from the legislature of the state, and the general assembly derives its power from the constitution. In each case the power to create implies and carries with it the power to abolish. The general assembly is empowered by section 107 of the constitution to create county and district offices for a term not exceeding four years. But it will hardly be contended that, having created an office with a term of four years, the general assembly may not abolish it in two. Nor is there analogy between the case at bar and the illustration of counsel of an agency to make a lease for a specified term. The principal, through his agent, binds himself by a contract. There is no contract right to a statutory office. . . ."

And in the case of <u>Wright v. City of Florence</u>, 93 S.E.2d 215, (S.C. Sup. 1956) the Court upheld the validity of a city ordinance abolishing a Civil Service Commission previously set up by ordinance under a statute permitting the establishment of such a system, but which was silent as to the power to abolish.

Section 3 of Article 6243e, setting forth the composition and powers of the Board of Trustees, provides that the Board is to "receive, <u>handle and control, manage and disburse</u> such fund for the respective city or town and as such Board shall have the power and authority to hear and determine all applications for retirement, claims for disability, either partial or total, and to designate the beneficiaries or persons entitled to participate therein or therefrom as hereinafter directed. . ." (Emphasis supplied)

In the interpretation of any statute, "the aim and object of construction is to ascertain and enforce the legislative intent, . . . . When the intent is plainly expressed in the language of a statute it must be given effect without attempting to construe or interpret the law. On the other hand when it is necessary to construe an act in order to determine its proper meaning, it is settled by a host of decisions that the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment." 39 Tex. Jur. 167, 168, Statutes, Sec. 90. It is further stated in Volume 39 of Texas Jurisprudence, at page 257: "According to the above principles of interpretation, an amendment will be construed and harmonized with the Act . . . to which it is added, and of which it forms a part. The court may look to the body of the amendatory act, its title and emergency clause, the existing facts or conditions at the time of the amendment, and the body of the act amended."

The emergency clause of the amendment enabling the Board of Trustees to increase the maximum pension to $150.00 reads in part as follows: "Sec. 4. The fact that Boards of Trustees in many cities and towns under the Firemen's Relief and Retirement Fund desire to increase the monthly pensions of firemen under the Act, and the fact that all the present funds are not being used by the Board of Trustees, and the further fact that there are a large number of needy firemen who have served the public well and fulfilled all of the requirements to obtain such pension and such pension is inadequate for a living wage, create an emergency . . ." Acts 53rd Leg. R.S. 1953, ch. 82, p. 354. When read in conjunction with the general provisions of Section 3 of Article 6243e

quoted above, it appears that the Legislature intended to vest the Board of Trustees with discretion to control, manage and disburse such fund, with respect to the alternate benefits, under such conditions as current circumstances may justify, and that the Board may, by majority vote, decrease the alternate benefit pensions of those retired at the increased rate.

### SUMMARY

The Board of Firemen's Relief and Retirement Fund Trustees of the City of Wichita Falls, Texas, may decrease the pensions of firemen who have been retired at increased monthly payments allowed and voted into effect under the alternate or selective benefit provision of Section 6 of Article 6243e, Vernon's Civil Statutes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Dudley D. McCalla*

Dudley D. McCalla
Assistant

DDM:hmc

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Martin De Stefeno
Thomas Burrus
Maston Courtney
Lawrence Hargrove

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Morgan Nesbitt