# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 41

## OCTOBER TERM, A.D. 2019

## March 24, 2020

BOARD OF TRUSTEES OF LARAMIE COUNTY
d/b/a LARAMIE COUNTY FAIR BOARD OF
TRUSTEES,

Appellant
(Plaintiff),

v.

S-19-0192

BOARD OF COUNTY COMMISSIONERS OF
LARAMIE COUNTY and LARAMIE COUNTY,

Appellees
(Defendants).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Gay Woodhouse and Christopher Brennan, Woodhouse Roden Nethercott, LLC, Cheyenne, Wyoming. Argument by Ms. Woodhouse.

*Representing Appellees:*

Steven Freudenthal, Freudenthal & Bonds, P.C., Cheyenne, Wyoming. Argument by Mr. Freudenthal.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]     The Board of County Commissioners of Laramie County (Commissioners) passed a resolution dissolving the Laramie County Fair Board of Trustees (Fair Board) and assigning a new entity, the "Laramie County Events Department" (Events Department) the task of "operati[ng] and carrying forward" the county fair.  The Fair Board sought a declaration that the Commissioners had no authority to dissolve the Fair Board, or to reallocate tax money originally collected for the Fair Board's use.  On motions for summary judgment, the district court concluded that the Commissioners had authority to dissolve the Fair Board and entered declaratory relief in their favor.  We reverse and remand.

## ISSUES

[¶2]     The parties raise various issues that we consolidate and rephrase:

> 1.     Does the Fair Board have standing to maintain this declaratory judgment action?
>
> 2.     Do the Commissioners have implied authority to dissolve the Fair Board?

## FACTS

[¶3]     For many years, the Fair Board has been responsible for running the annual Laramie County Fair, "one of the oldest and largest fairs in the state of Wyoming."  The county fair hosts various events, including "Mutton Bustin', Pig Wrestling, demolition derby, wagon rides," and prize animal showcases.  More recently, the Fair Board has been tasked with overseeing operations beyond these traditional county fair events, including an RV campground, a rodeo arena, meeting halls, and a disc golf course, among others.  One such development is the ongoing "Archer Complex" project, a multiuse facility designed to host a variety of events, including "trade shows, expositions, sporting events, RV rallies, concerts, [and] horse and stock shows[.]"

[¶4]     In November 2018, the Commissioners passed a resolution dissolving the Fair Board (Resolution).  In its place, the Commissioners created the "Laramie County Events Department," tasked with managing and "carrying forward . . . the Laramie County Fair" and other Laramie County recreational activities, grounds, and facilities.  It also created the "Laramie County Events Advisory Board," which was to "function in an advisory capacity" to the Events Department.  According to the Commissioners, the "decision was driven by our need to consolidate our recreational and event-related activities and operations throughout the county."  During the public hearing on the Resolution, the Commissioners maintained that the fair would "continue to be the best fair in the country,

1

certainly the best fair in Wyoming"; that funding for the fair would not be cut; and that they "want[ed] the fair to succeed [and] to grow."

[¶5]   The Fair Board filed this action shortly after the Commissioners passed the Resolution, seeking a declaration "whether or not the Laramie County Commissioners have the authority to dissolve the Laramie County Fair Board of Trustees and substitute in its place an 'Events Advisory Board.'"   It also sought a declaration whether the Commissioners had authority to reallocate tax money originally collected for the Fair Board's use.  Following the parties' cross-motions for summary judgment, the district court concluded that the Commissioners had implied authority to dissolve the Fair Board and, because it had been dissolved, that the Fair Board lacked standing to challenge reallocation of collected tax money.  The Fair Board timely appealed.

## *STANDARD OF REVIEW*

[¶6]   Our standard of review of a district court's summary judgment ruling is well-established:

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016).  This Court reviews the same materials and uses the same legal standard as the district court. *Id.*  The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.*  A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

*In re Estate of Weeks*, 2018 WY 112, ¶ 15, 427 P.3d 729, 734 (Wyo. 2018) (quoting *White v. Wheeler*, 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017)).  Whether a party has standing to maintain a declaratory judgment action is a question of law that we review de novo. *Williams v. State ex rel. Univ. of Wyo. Bd. of Trs.*, 2019 WY 90, ¶ 7, 448 P.3d 222, 226 (Wyo. 2019).  Likewise, whether the Commissioners have authority to dissolve the Fair Board raises a question of statutory interpretation that we review de novo. *Delcon Partners LLC v. Wyo. Dep't of Rev.*, 2019 WY 106, ¶ 7, 450 P.3d 682, 684 (Wyo. 2019).

## *DISCUSSION*

### I.      *The Fair Board has standing to maintain this declaratory judgment action*

[¶7]   The Commissioners argue the Fair Board lacks standing to bring this declaratory judgment action because: 1) neither it nor its members suffered financial harm because of

2

the dissolution; 2) a judgment from this Court "cannot operate effectively upon the question of who controls the monies, means and methods of managing the various recreation and entertainment assets of Laramie County"; 3) a judicial determination from this Court will not have the force and effect of a final judgment; and 4) the members of the Fair Board have no property or liberty interest in their positions on the Fair Board.

[¶8]   "A party generally has standing if it is 'properly situated to assert an issue for judicial determination.'" *In re Estate of Stanford*, 2019 WY 94, ¶ 9, 448 P.3d 861, 864 (Wyo. 2019) (quoting *Gheen v. State ex rel. Dep't of Health, Div. of Healthcare Financing/EqualityCare*, 2014 WY 70, ¶ 16, 326 P.3d 918, 923 (Wyo. 2014)).   The existence of standing does not hinge on a party having a property or liberty interest.  Those inquiries are relevant to whether a party has been deprived of procedural due process, an issue not before the Court.  *See Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 27, 367 P.3d 619, 626 (Wyo. 2016) ("In order to establish a procedural due process claim, [a litigant] must first demonstrate that she possessed a property or liberty interest.").  Instead, our four-part test from *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974), determines whether a party has standing.

> First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests.  Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.  Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them.  Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.  Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

*Allred v. Bebout*, 2018 WY 8, ¶ 37, 409 P.3d 260, 270 (Wyo. 2018).

[¶9]   Here, the Fair Board has an existing or genuine right at stake because resolution of this action will determine whether it continues to exist.  The Fair Board has a genuine interest in its existence, regardless of whether it or any of its members might suffer financial harm by its dissolution.  A judgment declaring whether the Commissioners have authority to dissolve the Fair Board will effectively operate on that interest and have the force and

3

effect of law because it will finally determine the legal status of the Fair Board. Finally, the parties' divergent positions and arguments convince us that this proceeding is genuinely adverse in character. This controversy satisfies the *Brimmer* test.

## II. The Commissioners do not have the implied authority to dissolve the Fair Board in these circumstances

[¶10] The district court concluded that the Commissioners "possess the implied power to dissolve a board that they were granted the power to create," citing "their express power to create the Board in the first instance" under Wyo. Stat. Ann. § 18-9-101(a)(iii). On appeal, the Fair Board argues the district court's conclusion is contrary to the plain language of Wyo. Stat. Ann. §§ 18-9-101 and 102. Section 18-9-101 states:

> (a) Each board of county commissioners may:
>
> (i) Acquire lands and other property for fairgrounds, airports, parks and pleasure grounds;
>
> (ii) Construct, maintain and operate a public auditorium, athletic fields, civic center or other community building, which may be designated as a memorial to the war veterans of the United States of America;
>
> (iii) Appoint a board of trustees to control, maintain and manage the fairgrounds, airports, parks and pleasure grounds and to conduct agricultural, industrial and other fairs and exhibitions;
>
> (iv) Levy taxes, issue bonds or incur indebtedness as then authorized by law for other county purposes. The taxes shall be levied and collected as are other county taxes and the taxes collected, together with other monies received shall be expended as authorized under this section. Monies in the fund shall be expended only by the board of trustees.
>
> . . . .

Wyo. Stat. Ann. § 18-9-101 (LexisNexis 2019). The following section, Wyo. Stat. Ann. § 18-9-102, states in pertinent part:

> (a) The board of trustees provided by W.S. 18-9-101(a)(iii) shall be composed of not less than five (5) nor more than nine

4

(9) competent citizens of the county appointed by the board of county commissioners. Trustees shall serve five (5) year terms which shall be staggered. The board of county commissioners shall annually appoint a successor to the trustee whose term expires. . . .

(b)    As soon as the original board has been appointed they shall organize by electing a chairman, secretary and treasurer of the board. As soon as they organize they shall file without fee a certificate showing their organization with the county clerk and the secretary of state. Upon filing the certificate the board of trustees is a body corporate, empowered to sue and be sued . . . .

(c)    No member of the board of trustees shall be personally liable for any action or procedure of the board. The board has perpetual existence and it is not necessary to file any certificate other than that filed upon the original organization.

(d)    Each year when a new member of the board is appointed the trustees shall meet and again organize by electing a chairman, secretary and treasurer. Each member of the board shall serve without compensation . . . .

[¶11] The parties agree these statutes give the Commissioners the express authority to create a Fair Board; they have conflicting views on whether the law also provides the implied authority to dissolve the Fair Board. The issue is subject to our general rules of statutory interpretation:

[O]ur goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." Where legislative intent is discernible a court should give effect to the "most likely, most reasonable, interpretation of the statute, given its design and purpose."

We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner

5

with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 20, 452 P.3d 1276, 1282 (Wyo. 2019) (quoting *Wyo. Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)).

[¶12]   The role of the county in the administration of state government also guides our analysis.   "A county is a political subdivision of the state, created to aid in the administration of government."  *Bd. of Cty. Comm'rs for Sublette Cty. v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 22, 55 P.3d 714, 721 (Wyo. 2002) (quoting *Dunnegan v. Laramie Cty. Comm'rs*, 852 P.2d 1138, 1142 (Wyo. 1993); *accord Laramie Cty. Comm'rs v. Albany Cty. Comm'rs*, 92 U.S. 307, 308-312, 23 L.Ed. 552 (1875) (explaining that counties, cities, and towns "are but subdivisions of the State, deriving even their existence from the legislature"); *Carter v. Bd. of Cty. Comm'rs of Laramie Cty.*, 518 P.2d 142, 144 (Wyo. 1974) ("[T]he legislature may delegate a part of its power over local subjects to municipal corporations, county boards, and other public bodies . . . for the purpose of local self-government.") (citing *Bd. of Trs. of Mem'l Hosp. of Sheridan Cty. v. Pratt*, 262 P.2d 682, 687 (Wyo. 1953)).   Accordingly, counties "have no sovereignty independent from that of the state, and the only power available to them is the power that has been delegated to them by the state."  *Seherr-Thoss v. Teton Cty. Bd. of Cty. Comm'rs*, 2014 WY 82, ¶ 24, 329 P.3d 936, 946 (Wyo. 2014) (quoting *Ahearn v. Town of Wheatland*, 2002 WY 12, ¶ 14, 39 P.3d 409, 416 (Wyo. 2002)).   "As an arm of the state, the county has only those powers expressly granted by the constitution or statutory law or reasonably implied from powers granted."  *Ford v. Bd. of Cty. Comm'rs of Converse Cty.*, 924 P.2d 91, 95 (Wyo. 1996) (quoting *Bd. of Cty. Comm'rs of Laramie Cty. v. Dunnegan*, 884 P.2d 35, 40 (Wyo. 1994)).  Specifically, those powers include:

First, those granted by express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes not simply convenient, but indispensable.   Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the [county], and the power is denied.  Dillon on Municipal Corp., 5th ed., [§ 237.]   The rule of strict construction does not apply to the mode adopted by the [county] to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the legislature, and is left to the discretion of the [county]

6

authorities. In such a case the usual test of validity of the act of a [county] is whether it is reasonable. *Id.* § 239.

*Schoeller v. Bd. of Cty. Comm'rs of Park Cty.*, 568 P.2d 869, 876 (Wyo. 1977) (quotation marks omitted). We have also stated that "the powers of a county are usually more restricted than those of a municipal corporation." *Vandehei Developers v. Public Serv. Comm'n of Wyo.*, 790 P.2d 1282, 1286 (Wyo. 1990) (quoting *Schoeller*, 568 P.2d at 875).

[¶13] The plain language of section 101(a)(iii) grants the Commissioners authority to create a board of trustees with the power "to control, maintain and manage the fairgrounds" and "to conduct . . . fairs[.]" *See Anderson v. Bd. of Cty. Comm'rs of Teton Cty.*, 2009 WY 122, ¶ 22, 217 P.3d 401, 407 (Wyo. 2009) ("[T]he permissive word 'may' authorizes the specified action, but does not require it."). The Fair Board claims the language in section 102(c) stating that the "board has perpetual existence" expressly prohibits the Commissioners from dissolving the Fair Board. Read in context, however, that section merely excuses the Fair Board from filing requirements typically imposed on Wyoming corporations. Wyo. Stat. Ann. § 18-9-102(b) ("Upon filing the certificate the board of trustees is a body corporate."); Wyo. Stat. Ann. § 18-9-102(c) ("The board has perpetual existence *and it is not necessary to file any certificate other than that filed upon the original organization*.") (emphasis added). Neither section 101 nor section 102 provide the Commissioners express authority to dissolve the Fair Board. Thus, the issue is whether the power to dissolve the Fair Board can be "necessarily or fairly implied in" the Commissioners' permissive authority to establish it.

[¶14] In concluding that section 18-9-101(a)(iii) granted the Commissioners implied authority to dissolve the Fair Board, the district court reasoned:

> The County Commissioners possess the implied power to dissolve a board that they were granted the power to create. This is necessarily and fairly implied from, and incident to, their express power to create the Board in the first instance. W.S. § 18-9-101(a)(iii). In addition, the entire section read as a whole evidences the legislature's intent to grant broad authority to the Commission to create, fund, and manage fair and other recreational resources. The County Commissioners are responsible for, and must approve, acquisitions of land and are empowered to establish and collect taxes through mil levy to fund those responsibilities.
>
> *One of the ways, though not the only way*, a county can carry out those functions is to create a Fair Board, though they are not required to do so. The Fair Board being *a mechanism available* to the Commission, it is a reasonable reading of the statute that *it is essential they have the authority to dissolve*

7

> *that mechanism and continue to meet their obligations by other means.*

(Emphasis added.)

[¶15]  The district court relied on *State ex rel. Wyoming Agr. Coll. v. Irvine*, 84 P. 90 (Wyo. 1906) and *Wright v. City of Florence*, 93 S.E.2d 215 (S.C. 1956) for its conclusion that the Commissioners "possess the implied power to dissolve a board that they were granted the power to create."  But both of those cases pertain to bodies with broader authority than counties have been granted.  In *Irvine*, we considered the legislature's authority to dissolve an institution that it had created and held: "Having all the power that exists anywhere to establish an institution, [the legislature] necessarily has the power to dissolve it, unless the doing so involves the violation of some constitutional provision."  84 P. at 107.  *Irvine's* holding does not apply here because this case does not concern the legislature's authority to dissolve a legislatively created institution.  *Irvine* relied heavily on the principle that, subject to constitutional limitations, "the power of the Legislature over [public institutions] is unrestrained, and its authority supreme," stating:

> The Legislature is vested with all legislative powers of the state; it may do anything within the domain of legislation which is not repugnant to the state or federal Constitutions; and constitutional restrictions upon the Legislature are not to be enlarged by construction beyond their terms.  Moreover, the power of establishing public institutions is by the Constitution expressly vested in the Legislature.

*Id.* at 106.  The same is not true of counties.  As noted, counties "are purely auxiliaries of the state . . . and the statutes confer upon them all the powers they possess[.]"  *State ex rel. Bd. of Comm'rs of Goshen Cty. v. Snyder*, 212 P. 771, 781 (Wyo. 1923).  In contrast to the legislature, counties

> are governments of enumerated powers, acting by delegated authority, so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise only those which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant.

*Schoeller*, 568 P.2d at 876 (citing *Lakota Oil & Gas Co. v. City of Casper*, 116 P.2d 861 (Wyo. 1941)).  Thus, *Irvine* is not relevant to the scope of a county's more limited authority.

[¶16]  Likewise, *Wright* does not discuss the scope of a county's statutorily delegated authority.  Instead, it considered a municipality's authority to repeal an ordinance that it

8

had enacted. *Wright*, 93 S.E.2d at 216. The Court's analysis was guided by the statute granting the municipality authority to adopt the ordinance at issue, which stated its intent "to extend and enlarge the powers of such municipalities[.]" *Id.* No such language exists in the statute at issue here. Moreover, we have explained that "the powers of a county are usually more restricted than those of a municipal corporation," *Vandehei Developers*, 790 P.2d at 1286, which is particularly true in relation to a municipality's broad local "police powers" exercised via municipal ordinance. *See Dunnegan*, 852 P.2d at 1142 ("The county enforces state statutes and laws. It does not enact laws. A municipality may, on the other hand, enact ordinances with criminal penalties which it enforces through its police departments and municipal courts."); *see also* Osborne M. Reynolds, Jr., *Local Government Law* § 6 Distinction Between Public (or Municipal) Corporations and Public Quasi-Corporations, at 19-20 (2d. ed. 2001) (explaining that municipalities typically have broader powers of local government than counties); E. George Rudolph, *Wyoming Local Government Law* § 4.1, at 119 (1985) (describing municipalities' very broad "police power . . . to adopt and enforce regulatory ordinances").

[¶17]  Another case relied on by the Commissioners in this appeal is no more persuasive. In *Mariano & Assoc., P.C. v. Bd. of Cty. Comm'rs of the Cty. of Sublette*, 737 P.2d 323, 329 (Wyo. 1987), we stated that "a board, officer or governing body should not contract away either the discretion of future decision makers or more importantly the fiscal welfare of the citizens that they were elected or appointed to serve." The Commissioners rely on this statement for the proposition that a board of county commissioners should not be "bound by the legislative or policy decisions of its predecessors." However, *Mariano* concerned whether "a contract with a governmental entity which extends beyond the contracting official's term of office" was voidable by subsequent officials. *Id.* at 324. We are not confronted with the question of whether the Commissioners have had their discretion contracted away by previous county officials. Instead, our task is to determine what discretion to dissolve the Fair Board, if any, the legislature has granted the Commissioners.

[¶18]  The district court concluded that appointment of a board of trustees is merely one way in which the Commissioners can conduct a county fair. The plain language of section 18-9-101 leads to the opposite conclusion: appointment of a board of trustees is the *only* way in which the Commissioners can conduct a county fair. Section 101 authorizes the Commissioners to "[a]cquire lands and other property for fairgrounds"; "[c]onstruct, maintain and operate" various recreational structures; and raise funds to be expended as statutorily authorized for operation of the fair. Wyo. Stat. Ann. § 18-9-101(a)(i)-(iv). The legislature vested the authority "to control, maintain and manage the fairgrounds . . . and to conduct agricultural, industrial and other fairs and exhibitions" in the board of trustees.[1]

---

[1] The legislature similarly vests authority to manage and control county hospitals in boards of trustees. Wyo. Stat. Ann. § 18-8-104 (LexisNexis 2019); *see also Pratt*, 262 P.2d at 688 ("[T]he management of the [county] hospital is in the hands of the board, and the county, as such, plays but a minor part in that

9

Wyo. Stat. Ann. § 18-9-101(a)(iii)-(iv). The legislature has identified a board of trustees as the means by which a county must conduct a county fair.[2] It is true that the Commissioners are not required to appoint a board of trustees (just as they are not required to acquire fairgrounds, construct and maintain recreational structures, or raise money or incur indebtedness for the fair). Wyo. Stat. Ann. § 18-9-101(a)(iii) ("Each board of county commissioners *may* . . . [a]ppoint a board of trustees.") (emphasis added). But if the Commissioners exercise that permissive authority by choosing not to appoint a board of trustees, no entity with authority to conduct the county fair exists.

[¶19] The Commissioners' Resolution clearly contemplates that the county fair will continue without a board of trustees. *See, e.g.*, Resolution at ¶ II (stating that the newly created Events Department would be responsible for "the operations and carrying forward of the Laramie County Fair").[3] Although we appreciate the Commissioners' desire to consolidate and streamline management of county recreational activities, the legislature has identified the means by which a county must conduct a county fair, and deviation from that procedure is beyond its authority. *Schoeller*, 568 P.2d at 877 ("When the statutory delegation of power to a local government entity specifies a procedure to be followed in the exercise of that power, the procedure becomes a condition of and restriction upon the grant."). The rules of statutory construction, along with the restrictive approach our precedent takes to county powers, compel the conclusion that the Commissioners lack the implied authority to dissolve the Fair Board under these circumstances.[4]

[¶20] Having concluded that the Commissioners did not have authority to dissolve the Fair Board, we must also conclude that the district court erred in holding that the Fair Board

---

connection."). The Fair Board argues that the statutory section in the chapter governing memorial hospitals entitled "Dissolution," Wyo. Stat. Ann. § 18-8-109, and the lack of a similar "Dissolution" section in the chapter governing fairgrounds, evidences "that the legislature did not intend for the boards of county commissioners to dissolve the county fair boards of trustees once created." This argument ignores that Wyo. Stat. Ann. § 18-8-109 does not concern a board of county commissioners' authority to dissolve the board of trustees of a county hospital. Instead, it grants the board of trustees authority to dissolve the hospital itself, subject to approval by the commissioners. *Id.* ("[T]he trustees of a memorial hospital may vote to dissolve and terminate the county memorial hospital.").

[2] Prior to 1977, the statutes authorized county commissioners to maintain, manage and conduct fairs. *See* Wyo. Comp. Stat. § 26-801 (1951); 1915 Wyo. Sess. Laws ch. 54, § 1, at 45. When the legislature re-codified statutes relating to counties in 1977, *see generally* 1977 Wyo. Sess. Laws, pp. 294-399, county commissioners retained their authority to acquire lands for fairgrounds, but the legislature removed the commissioners' prior express authority to "maintain, manage and conduct agricultural, industrial and other fairs." *Compare* 1977 Wyo. Sess. Laws 388 (current version at Wyo. Stat. Ann. § 18-9-101 (2019)) (granting no such authority) *with* Wyo. Comp. Stat. § 26-801 (1951) (granting such authority), *and* 1915 Wyo. Sess. Laws ch. 54, § 1, at 45 (same).

[3] The Events Department is not a board of trustees and operates "under the direct supervision of the Laramie County Commissioners." *See* Resolution at I. Further, the newly appointed "Laramie County Events Advisory Board" functions only in "an advisory capacity." *Id.* at VI.

[4] We do not decide whether the Commissioners have authority to dissolve the Fair Board in the event they choose to discontinue the county fair.

10

lacked standing to challenge the reallocation of tax money originally collected for the Fair Board's use. The district court reasoned that the Fair Board lacked standing to seek declaratory relief on this issue because it had been dissolved. However, the Commissioners lacked authority to dissolve the Fair Board, and their Resolution is void. *Crouthamel v. Bd. of Albany Cty. Comm'rs*, 951 P.2d 835, 839 (Wyo. 1998) (holding county board's "[f]ailure to follow the statutory requirements in adopting a freeze resolution results in a void, or invalid, freeze resolution"); *Bd. of Cty. Comm'rs, Carbon Cty. v. White*, 547 P.2d 1195, 1200 (Wyo. 1976) (holding county agreements purporting to vacate established county road by methods other than those provided by statute null and void); *accord* 20 C.J.S. *Counties* § 106 (Feb. 2020 Update) ("Acts done outside the authority of the county board are void."); 56 Am. Jur. 2d *Municipal Corporations, Etc.* § 179 (Feb. 2020 Update) ("any act by a county in excess of [its] authority . . . is null and void as an ultra vires act"). Thus, the Fair Board was not dissolved, and it has standing to challenge the use of tax money to which it was assertedly entitled. Because the district court found the Fair Board lacked standing, it made no findings on the allocation of tax money. We remand for further proceedings.[5]

[¶21] Reversed and remanded.

---

[5] The Commissioners filed a "Motion Suggesting Mootness" with this Court, asserting this issue is moot because "[a]ll current funds arguably collected for the benefit of the fair have been expended on the fair." The record does not contain the facts necessary for us to make that determination.

11