# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 93

APRIL TERM, A.D. 2016

September 13, 2016

JASON THORNOCK,

Appellant
(Plaintiff),

v.

S-15-0108

PACIFICORP, an Oregon Company,

Appellee
(Defendant).

*Appeal from the District Court of Lincoln County*
The Honorable David B. Park, Judge

*Representing Appellant/Plaintiff:*
    David M. Clark of Greear Clark King, P.C., Worland, Wyoming.

*Representing Appellee/Defendant:*
    David G. Ditto of Associated Legal Group, LLC, Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    The Appellant, Jason Thornock, sued the Appellee, PacifiCorp, for breach of contract, breach of the duty of good faith and fair dealing, specific performance, and costs and attorney fees, after PacifiCorp did not provide electric service to an irrigation pivot located on Mr. Thornock's property using a particular easement.  While PacifiCorp did not utilize the easement Mr. Thornock originally suggested, it did provide electric service to Mr. Thornock's pivot using a different route under the terms of a second contract the parties entered into approximately three months after the original contract. The district court granted summary judgment in favor of PacifiCorp for five reasons.  It found that (1) the second contract superseded the first contract; (2) Mr. Thornock breached the terms of the first contract, relieving PacifiCorp of its obligation to perform under the contact; (3) it was impracticable for PacifiCorp to perform its obligations under the first contract; (4) the first contract precluded Mr. Thornock from seeking consequential damages; and (5) because PacifiCorp performed its obligations under the terms of the second contract it could not have breached its duty of good faith and fair dealing.  Mr. Thornock appeals the entirety of the district court's order.  We affirm.

## ISSUE

[¶2]    Mr. Thornock raises four issues in this appeal; however, we find that one of the issues is dispositive and we limit our review to that issue:

Did Mr. Thornock's second contract with PacifiCorp supersede the first contract?

## FACTS

[¶3]    In the fall of 2009, Mr. Thornock requested that PacifiCorp provide electric service to an irrigation pivot on his property.  On March 23, 2010, Mr. Thornock signed a General Service Contract (first contract) authorizing PacifiCorp to provide electric service to the pivot.  The contract stated that the agreement is "between PacifiCorp, doing business as Rocky Mountain Power ("Company"), and Jason Thornock ("Customer"), for electric service for Customer's IRRIGATION operation at or near COKEVILLE, Wyoming."  The contract required that Mr. Thornock "[p]rovide legal rights-of-way to Company, at no cost to the Company, using Company's standard forms.  This includes rights-of-way on Customer's property and/or adjoining property and any permits, fees, etc. required to cross public lands[.]"  Mr. Thornock provided a check to PacifiCorp for $10,248 for "Customer Paid Costs."   A representative from PacifiCorp signed the contract on April 13, 2010.

[¶4]    Attached to the contract were two documents printed on April 6, 2010.  One document contained notes to the service crew that the new power line conductors would be placed on an existing easement.  The second document contained a detailed estimate

1

of the costs and also noted that the project would utilize an existing utility easement. While the documents do not give a legal description of the easement, the parties do not dispute that the documents refer to a pole line easement recorded in 1967 across Erick and Jeanne Esterholdt's property (Esterholdt Easement). Although one or two power poles remained standing on the Esterholdt Easement, the power lines had been blown down and service had not been provided over the lines for over twenty years.

[¶5] When the Esterholdts learned PacifiCorp intended to use the easement over their property to provide power to Mr. Thornock's pivot, they threatened a trespass claim and retained an attorney. PacifiCorp told the Esterholdts that it planned to proceed with the construction of the power line and, in turn, the Esterholdts filed a lawsuit against PacifiCorp. The Esterholdts requested that the district court declare the 1967 Pole Line Easement void and sought a temporary and permanent injunction to keep PacifiCorp off their property. Mr. Thornock intervened in the lawsuit and told PacifiCorp that he would sue for breach of contract if it did not construct the power line across the easement.[1] PacifiCorp faced a lawsuit from the Esterholdts if it attempted to use the easement, and a lawsuit from Mr. Thornock if it did not. PacifiCorp decided it would not enter the Esterholdt property until the validity of the easement was resolved by the parties or the court. The Esterholdts' lawsuit proceeded, and PacifiCorp defended the validity of the easement. The district court found the easement valid after a trial in November of 2011. The Esterholdts appealed the decision, and on May 22, 2013, this Court affirmed the district court. *See generally Esterholdt v. PacifiCorp*, 2013 WY 64, 301 P.3d 1086 (Wyo. 2013).

[¶6] PacifiCorp returned the "Customer Paid Costs" of $10,248 under the first contract to Mr. Thornock on May 6, 2010. On June 29, 2010, Mr. Thornock signed a second General Service Contract (second contract) requesting that PacifiCorp provide power to the same irrigation pivot on his property. The Second Contract stated: "This Contract, dated June 29, 2010, is between PacifiCorp, doing business as Rocky Mountain Power ("Company"), and Jason Thornock ("Customer") for electric service for Customer's IRRIGATION CONNECT operation at or near 7832 HWY 30 COKEVILLE, Wyoming." As with the first contract, the second contract required that Mr. Thornock "[p]rovide legal rights-of-way to Company, at no cost to the Company, using Company's standard forms. This includes rights-of-way on Customer's property and/or adjoining property[.]" The contract also contained a clause stating, "This Contract contains the entire agreement of the parties with respect to the subject matter, and replaces and supersedes in their entirety all prior agreements between the parties related to the same subject matter." A document printed on July 1, 2010, and attached to the contract,

---

[1] Although Mr. Thornock threatened a lawsuit if PacifiCorp did not construct the power line across the easement at that time, it does not appear Mr. Thornock took any action in this regard until he filed his Complaint in this action—seven months after this Court issued its opinion in *Esterholdt v. PacifiCorp*, 2013 WY 64, 301 P.3d 1086 (Wyo. 2013) and three years after PacifiCorp returned Mr. Thornock's "Customer Paid Costs" for the first contract.

2

showed that PacifiCorp and Mr. Thornock planned to utilize a right-of-way granted by Sharon Dayton (Dayton Easement). A representative of PacifiCorp signed the contract on July 6, 2010. PacifiCorp constructed the power line over the Dayton Easement and continues to provide power to Mr. Thornock's pivot via the Dayton Easement to date.

[¶7] Approximately seven months after this Court affirmed that the Esterholdt Easement was valid, Mr. Thornock filed a complaint against PacifiCorp based on the first contract. He alleged breach of contract and breach of the duty of good faith and fair dealing, and sought damages, specific performance, and attorney fees. Mr. Thornock claimed PacifiCorp was still obligated to provide power via the Esterholdt Easement under the terms of the first contract and failed to do so. In response to the Complaint, PacifiCorp filed a counterclaim for breach of contract and attorney fees, alleging that Mr. Thornock breached the first contract by failing to provide a legal right-of-way at no cost to PacifiCorp. Although Mr. Thornock provided a record showing the existence of the Esterholdt Easement, PacifiCorp argued it expended significant costs in defending the easement's validity.

[¶8] PacifiCorp filed a motion for summary judgment. In support of that motion, PacifiCorp reiterated that Mr. Thornock had failed to provide a legal right-of-way at no cost to PacifiCorp and also argued that PacifiCorp's performance under the first contract was excused due to circumstances beyond PacifiCorp's control, the second contract superseded the first contract, the first contract limited damages, and the claim regarding a breach of the duty of good faith and fair dealing must fail because PacifiCorp performed its obligations under the terms of the second contract. In response, Mr. Thornock argued he did not breach the first contract because he provided a legal right-of-way that was valid at the time the contract was entered into by the parties. Mr. Thornock asserted it was the Esterholdts who caused PacifiCorp to expend funds defending the easement—not Mr. Thornock. Mr. Thornock also argued that PacifiCorp voluntarily consented to the injunction prohibiting its employees from entering the Esterholdts' property and, therefore, the circumstances that lead to the injunction were within PacifiCorp's control. Further, Mr. Thornock asserted that the second contract did not supersede the first contract because the contracts covered two distinct subject matters—the first contract governed PacifiCorp's installation of power via the Esterholdt Easement, and the second contract governed PacifiCorp's installation of power via the Dayton Easement. Finally, Mr. Thornock argued the first contract allowed him to recover damages, and that because PacifiCorp breached the terms of the first contract, his claim for breach of the duty of good faith and fair dealing must survive summary judgment.

[¶9] The district court granted PacifiCorp's motion for summary judgment in all respects. The court concluded that the subject matter for the two contracts was the same—to supply electrical power to Mr. Thornock's pivot. Because the subject matter of the two contracts was identical, the district court determined that the explicit superseding provision in the second contract applied. Consequently, the terms of the first contract

were entirely superseded by the second contract, and Mr. Thornock could not maintain claims based on the first contract. The court also ruled in favor of PacifiCorp on its other claims. Mr. Thornock timely appealed the order.

## STANDARD OF REVIEW

[¶10] We review a district court's order on summary judgment *de novo*:

> [w]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo. 1999); *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994).

*Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016) (quoting *Inman v. Boykin*, 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014)).

## DISCUSSION

[¶11] The district court accepted PacifiCorp's argument that it is not obligated to provide electric service to Mr. Thornock's irrigation pivot via the Esterholdt Easement because the second contract, which resulted in service being provided via the Dayton Easement, superseded the first contract. In support of this argument, PacifiCorp relies on the second contract, which was signed by Mr. Thornock on June 29, 2010. The final paragraph of that contract states: "This Contract contains the entire agreement of the parties with respect to the subject matter, and **replaces and supersedes in their entirety all prior agreements between the parties related to the same subject matter**." PacifiCorp maintains that the district court properly concluded that the subject matter of both contracts was the same—to provide electric service to Mr. Thornock's irrigation pivot—resulting in the first contract being superseded by the second contract.

4

[¶12] Mr. Thornock counters the district court's decision by arguing that the contracts concern different subject matters because, although both contracts provide for electricity to the same irrigation pivot, they provide for electric service over two different easements. Further, he argues this Court should consider the circumstances surrounding the creation of the second contract in determining Mr. Thornock's and PacifiCorp's intent—specifically, to show the parties intended the electric service over the Dayton Easement be a temporary solution until the validity of the Esterholdt Easement was resolved.

[¶13] Our review of a contract begins with an analysis of the document's plain language. *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012).

> [T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.* [*v. Texaco*], 882 P.2d [212,] 220 [(Wyo. 1994)]; *Prudential Preferred Properties* [*v. J and J Ventures*], 859 P.2d [1267,] 1271 [(Wyo. 1993)]. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996).

*Id.*, ¶ 26, 279 P.3d at 1013 (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 501-02 (Wyo. 2011)). Further, we interpret the contract as a whole and read each provision in light of the others to find the plain meaning. *Id.*, ¶ 28, 279 P.3d at 1013. We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless. *Id.* Finally, "[b]ecause we use an objective approach to interpret contracts, evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract." *Id.*, ¶ 27, 279 P.3d at 1013.

[¶14] Neither Mr. Thornock nor PacifiCorp argues the terms of the first or second contracts are ambiguous and we agree with that conclusion. While the parties disagree about what constitutes the "subject matter" of the contract, their disagreement does not render either contract ambiguous. *See Claman*, ¶ 27, 279 P.3d at 1013. Therefore, we turn to the full language of both contracts to determine whether the subject matter of the contracts is the same. If the subject matter is the same, then the second contract supersedes the first.

[¶15]   The beginning of the first contract succinctly explains the purpose of the contract: "This Contract, dated March 16, 2010, is between PacifiCorp, doing business as Rocky Mountain Power ("Company"), and Jason Thornock ("Customer"), for electric service for Customer's IRRIGATION operation at or near COKEVILLE, Wyoming."  Similarly, the second contract states:  "This Contract, dated June 29, 2010, is between PacifiCorp, doing business as Rocky Mountain Power ("Company"), and Jason Thornock ("Customer"), for electric service for Customer's IRRIGATION CONNECT operation at or near 7832 HWY 30 COKEVILLE, Wyoming."  This language makes it clear that the subject matter of both contracts is that PacifiCorp will provide electric service to Mr. Thornock's irrigation operation on his property in Cokeville.  Both parties agree that the purpose of both contracts was to provide electric service to the same irrigation pivot.

[¶16]   Mr. Thornock, however, argues the subject matter of each contract is more specific in that each one deals with a specific route for the electric service—the first contract governing services over the Esterholdt Easement and the second contract governing services over the Dayton Easement.  We do not agree.  Neither contract makes any mention of a specific easement being utilized.  In both contracts, Paragraph 7 states that Mr. Thornock agrees to "[p]rovide legal rights-of-way to Company, at no cost to the Company, using Company's standard forms.  This includes rights-of-way on Customer's property and/or adjoining property, and any permits, fees, etc. required to cross public lands[.]"  Therefore, the contracts simply incorporate Mr. Thornock's agreement to provide a legal right-of-way without mandating that a particular right-of-way be used.

[¶17]   Granted, both of the contracts had documents attached that generally referred to the easement Mr. Thornock provided.  Contracts may consist of several different documents, and any exhibits that are attached to a contract and referenced in the contract become part of the contract as a whole.  *Union Pacific Resources Co. v. Texaco, Inc.*, 882 P.2d 212, 219-20 (Wyo. 1994).  However, in order for additional documents to become part of the contract, they must actually be incorporated.  *Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶ 79, 363 P.3d 18, 38 (Wyo. 2015).  "It is not enough for the contract to merely mention the instrument; the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument." *Id.*, ¶ 79, 363 P.3d at 39.  While the documents generally describing the easements were attached to the contracts, the language of the contracts does not specifically incorporate the documents.  In fact, the contracts do not mention the attached documents whatsoever.  Further, the dates the documents were created were after Mr. Thornock had already signed each of the contracts.  Therefore, it is clear the information contained in the attached documents could not have been incorporated into the contract.  Based on the unambiguous language in the contracts, the subject matter of both contracts is generally for PacifiCorp to provide power to Mr. Thornock's irrigation pivot, without regard to the use of any particular easement. Nothing in either contract suggests that the subject matter of the contract is the use of a particular easement.   To the contrary, the contracts explicitly indicate the subject matter is to provide power to an irrigation pivot.

[¶18] Mr. Thornock argues that, instead of simply relying on the plain language found within the contract, this Court should use additional facts and circumstances surrounding the formation of the second contract when determining Mr. Thornock's and PacifiCorp's intent in reaching their agreement. Mr. Thornock claims the surrounding facts and circumstances demonstrate the electric service over the Dayton Easement was meant as only a temporary solution until the resolution of the dispute over the Esterholdt Easement. In support of this argument, Mr. Thornock directs this Court to the decisions in *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, 126 P.3d 909 (Wyo. 2006); *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, 226 P.3d 889 (Wyo. 2010); and *Ecosystem Resources, L.C. v. Broadbent Land & Resources, LLC*, 2012 WY 49, 275 P.3d 413 (Wyo. 2012). Mr. Thornock's reliance upon these cases is misplaced.

[¶19] In his brief, Mr. Thornock offers that "Courts should consider the circumstances surrounding execution of the agreement to determine the parties' intention, even in reviewing unambiguous contracts." *Ultra Resources*, ¶ 22, 226 P.3d at 905 (citing *Mullinnix*, ¶ 6, 126 P.3d at 915; *Caballo Coal Co. v. Fidelity Exploration & Production Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, 314-15 (Wyo. 2004). However, a review of those cases and the precedent those cases rely on make it clear that Mr. Thornock is relying on that statement out of the context in which the rule is applied. This rule of contract interpretation is used only in situations where an otherwise unambiguous term had a different, special, or technical usage at the time the contract was executed. *See Hickman v. Groves*, 2003 WY 76, ¶ 11, 71 P.3d 256, 259-60 (Wyo. 2003) (considering the use of the term "oil rights" in a contract executed in 1944); *Caballo Coal Co.*, ¶ 11, 84 P.3d at 314-17 (determining whether the term "minerals" includes coal bed methane); *Ultra Resources*, ¶ 43, 226 P.3d at 909; *Ecosystem Resources*, ¶ 12, 275 P.3d at 418 (considering the use of the term "timber" in contracts executed in the early 1900's); *Berthel Land and Livestock v. Rockies Exp. Pipeline LLC*, 2012 WY 52, ¶¶ 15-24, 275 P.3d 423, 430-433 (Wyo. 2012) (considering extrinsic evidence to determine the definition of the word "premises" in order to define the unambiguous term "rock" as used in a pipeline easement).

[¶20] The cases cited by Mr. Thornock do not give parties permission to use extrinsic evidence to demonstrate their subjective intent. To do so would violate our long-standing rule that evidence of a party's subjective intent is not relevant or admissible in interpreting a contract. *Claman*, ¶ 27, 279 P.3d at 1013. Instead, these cases recognize the difference between providing evidence of the surrounding circumstances of a contract to give meaning to an unambiguous term as used ***at the time the contract was executed*** and providing extrinsic parol evidence to show a party's subjective intent that is contrary to the language of the contract. In *Mullinnix*, we explained:

> The parol evidence rule has been stated in many ways but the
> basic notion is that a writing intended by the parties to be a

7

final embodiment of their agreement may not be contradicted by certain kinds of evidence. A writing that is final is at least a partial integration. If the writing is final and also complete, it is a total integration and may not only not be contradicted by the type of evidence in question but may not even be supplemented by consistent (non-contradictory) additional terms. If it is final and incomplete it may be supplemented by consistent additional terms.

*Mullinnix*, ¶ 25, 126 P.3d at 920 (quoting *Longree, Ltd. v. Resource Control International, Inc.*, 755 P.2d 195, 204 (Wyo. 1988)). Said another way:

[E]vidence of usage may be admissible to give meaning to apparently unambiguous terms of a contract where other parol evidence would be inadmissible. Thus, circumstances known to the parties at the time they entered into contract, such as what that industry considered to be the norm, or reasonable or prudent, should be considered in construing a contract, while the parties' statements of what they intended the contract to mean are not admissible.

*Id*. (quoting *Hickman*, ¶ 13, 71 P.3d at 260 (quoting 12 Samuel Williston, *A Treatise on the Law of Contracts*, § 34:5 (4th ed. 1999))).

[¶21] While Mr. Thornock urges us to consider evidence outside of the four corners of the contract in order to fully understand the circumstances surrounding the second contract's formation, he is not doing so with the intent of providing an industry standard or a specialized meaning to a particular term. Instead, he is attempting to insert terms into the contract that simply do not exist. Mr. Thornock claims the record demonstrates the second contract was meant to be temporary and used only until the Esterholdt Easement dispute was resolved. This assertion, however, is contrary to the plain language of the second contract, which does not give any indication whatsoever that the electric service provided in the second contract was temporary in nature. In fact, a clause in the second contract explicitly states the contract will remain in effect for five years following the date PacifiCorp is ready to provide service. This identical provision is also found in the first contract. Because the provisions are same, the temporal nature of the contracts cannot be different—i.e. permanent v. temporary. Thus, Mr. Thornock is attempting to use extrinsic evidence to add provisions to the second contract that are contrary to the contract's plain language. This is what the parol evidence rule expressly forbids. *Mullinnix*, ¶ 25, 126 P.3d at 920 ("Consequently, the function of the parol evidence rule is to prevent parties from supplementing or contradicting the terms of the contract.").

## CONCLUSION

[¶22]  The second contract between Mr. Thornock and PacifiCorp contains a clear and unambiguous provision wherein the parties agreed that the contract reflected the entire agreement between the parties regarding the subject matter—electric service to Mr. Thornock's irrigation pivot—and that the second contract replaced and superseded any other contracts that may have existed.  Therefore, the first contract between Mr. Thornock and PacifiCorp has been superseded and PacifiCorp is not required to perform under the provisions of that agreement.

[¶23]  Affirmed.