# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 63

APRIL TERM, A.D. 2020

May 21, 2020

THOMAS SCRANTON,

Appellant
(Plaintiff),

v.

GAY WOODHOUSE and WOODHOUSE
RODEN NETHERCOTT, LLC.,

Appellees
(Defendants).

S-19-0243

*Appeal from the District Court of Laramie County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
    Steve C.M. Aron, Aron Law Office, Laramie, Wyoming.

*Representing Appellees:*
    Anna M. Reeves Olson, Park Street Law Office, Casper, Wyoming.

*Before FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ. and FROELICHER, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FROELICHER, District Judge.**

[¶1]   Client, Thomas Scranton, appeals from a district court's decision granting his attorney, Gay Woodhouse, and her law firm summary judgment in a legal malpractice action.  Mr. Scranton hired Ms. Woodhouse to represent him in an administrative hearing regarding his termination from employment with the City of Cheyenne (City).  Ms. Woodhouse failed to timely request the hearing on behalf of Mr. Scranton, which resulted in Mr. Scranton being denied a hearing to contest his termination.  Ms. Woodhouse admitted her conduct fell below the applicable legal standard of care but contends her conduct did not proximately cause Mr. Scranton any injury.  Mr. Scranton asserts there are genuine issues of material fact in dispute on the question of causation, which precludes summary judgment.  We affirm.

## *ISSUES*

[¶2]   The parties list numerous issues on appeal.  We rephrase those issues as follows:

1.     Was expert testimony necessary to prove that Ms. Woodhouse's malpractice was the proximate cause of Mr. Scranton's injuries?

2.     Did Ms. Woodhouse's expert's affidavit make a prima facie showing that Ms. Woodhouse's malpractice was not the proximate cause of Mr. Scranton's injuries?

3.     If Ms. Woodhouse's expert's affidavit made a prima facie showing, was Mr. Scranton's expert's deposition testimony sufficient to demonstrate the existence of a genuine issue of material fact concerning causation?

## *FACTUAL BACKGROUND*

[¶3]   Mr. Scranton graduated from the University of Wyoming in 1972 with a degree in Accounting.  In 1989, Mr. Scranton obtained an advanced degree from the University of Washington's Pacific Coast Banking School.  American National Bank (ANB) hired Mr. Scranton as a loan officer in Cheyenne, Wyoming in 1975.

[¶4]   Several years later, ANB terminated Mr. Scranton's employment because the bank suspected Mr. Scranton was attempting to start a competing bank in Wheatland, Wyoming.  Mr. Scranton then worked for First Wyoming Bank in Kemmerer, Wyoming and Cheyenne, Wyoming between 1980 and 1992.  In 1992, ANB rehired Mr. Scranton as acting president.  In 1993, ANB terminated Mr. Scranton for a second time.  Mr. Scranton was terminated because he "lacked leadership skills" and "did not demonstrate the leadership that [the Bank] wanted."

1

[¶5]    In 1995, First National Bank in Laramie, Wyoming hired Mr. Scranton, but after one year, Mr. Scranton was asked to resign after making a loan presentation the board of directors "simply did not care for[.]"  After resigning, Mr. Scranton left the banking industry and worked as a general manager for Moreland Wholesale, a candy and tobacco wholesaler.  After Moreland Wholesale closed in 2002, Mr. Scranton started a home inspection business.

[¶6]    On January 8, 2008, Mr. Scranton applied for a position as a building plans examiner at the City's Planning and Zoning Department.  Mr. Scranton's employment application indicated, in part, he obtained an M.B.A. from the University of Washington's Pacific Coast Banking School in 1989, and he left his employment at First National Bank in 1995 because of an "opportunity with Moreland Wholesale."  The City's employment application included a question asking Mr. Scranton if he had ever been fired or asked to resign from a job.  Mr. Scranton acknowledged he was asked to leave ANB in 1975, but did not indicate that he was terminated from ANB a second time for lacking leadership, or that First National Bank asked him to resign in 1996.  Mr. Scranton signed the application certifying "that all the information provided" in his application was "true and complete" and acknowledged that any "false information or omission" may result in his "dismissal if discovered at a later date."  The City hired Mr. Scranton as a building plans examiner.

[¶7]    In 2012, Mr. Scranton was promoted from Plans Examiner to Deputy Chief Building Official and received a salary adjustment.  According to Mr. Scranton, he did not want the promotion and rejected it, but he did not notify anyone at the City that he decided to reject the promotion.  Mr. Scranton testified he did not want the promotion because he believed the raise in hourly pay connected with the promotion was not "fair and adequate compensation" for the additional duties and responsibilities.

[¶8]    In April and May of 2016, two City employees complained to Denise Freeman, the City's Human Resources Director, and made allegations of inappropriate conduct occurring within the City's permitting and licensing department.  These complaints included allegations of: (1) harassment of female Licensing and Permitting Specialists, (2) male employees' use of profanity and offensive language, and (3) failures to follow procedure regarding permit fees and plan reviews.  In response to these complaints, Ms. Freeman hired a private investigator to investigate the claims.

[¶9]    The investigator interviewed sixteen staff members from the City's Building Department.  Three City employees made allegations against Mr. Scranton.  The first employee reported she was employed by the City for five years and that the Building Department was a "hostile workplace."  She further alleged "that [] Scranton wants to be a father figure to female staff," he "[h]angs out at their desk for hours," he treats one particular employee poorly and uses terms such as "sweetie, honey" when dealing with female staff, and that "Scranton gets away with too much and [his supervisor] just sits there."  The second employee reported she was employed by the City for one year and five

2

months and that the Building Department was a "Boys Club Atmosphere," Mr. Scranton used sexist comments such as "dear, darling, sweetie," and was "patronizing" with female staff. The third employee reported she was employed by the City for three years and that "[t]he work environment is a problem[,]" and Mr. Scranton makes them feel "beneath them" and belittles her with words such as "dear, sweetie, pretty."

[¶10] The investigator interviewed Mr. Scranton regarding the allegations of inappropriate conduct with female colleagues. Mr. Scranton agreed he was friendly with the licensing and permitting staff, but did not believe he acted inappropriately toward them. Mr. Scranton also acknowledged the use of profanity at the workplace, and confirmed the inspectors used profanity during certain meetings.

[¶11] The investigator confirmed the use of profanity by the male staff members in the permitting and licensing department during interviews he conducted with three male employees. The three male employees agreed or could not deny the use of profanity at certain meetings.

[¶12] The investigation concluded the male employees' use of profanity at certain meetings caused female staff members to feel uncomfortable and created a hostile work environment. In addition, the investigation revealed there was a turn-over rate of 275 percent of the female staff members employed in the licensing and permitting positions since 2014. Finally, the investigation noted that Mr. Scranton received a pay raise and a title change, but that Mr. Scranton declined the promotion without communicating this to anyone at the City.

[¶13] Following the investigation, Ms. Freeman conducted several supplemental interviews. The supplemental interviews focused primarily on one individual, a female employee within the licensing and permitting department. That female employee told Ms. Freeman she overheard Mr. Scranton "complaining" about his wife and stating "my wife, her f[]ing leg was f[]ing twice the size it should be[.]" The employee also told Ms. Freeman she overheard Mr. Scranton talking with a male building inspector about a recent dream in which Mr. Scranton "saw himself in the nude, on a skateboard, with a red ribbon tied around his penis going toward [a female co-worker]." Mr. Scranton denied describing the dream at work.

[¶14] After concluding her supplemental investigation, Ms. Freeman made the following conclusions: (1) Mr. Scranton's treatment of female staff was demeaning, (2) Mr. Scranton used profane language in the workplace, (3) the female employee's description of Mr. Scranton's skateboard dream was credible, (4) Mr. Scranton had accepted a promotion with a pay increase without assuming the additional job duties, and (5) Mr. Scranton had misrepresented his education on his employment application by claiming he had received an M.B.A. when he had not done so.

*PROCEDURAL HISTORY*

[¶15] On August 9, 2016, the City issued a written statement of termination to Mr. Scranton at a meeting with Ms. Freeman and the head of the building department. The statement of termination indicated Mr. Scranton was terminated due to: misconduct, bullying, dishonesty, insubordination, knowingly or willfully falsifying or misrepresenting any material fact in an employment application, sexual harassment, disruption of the workplace, and use of obscene language. The statement of termination notified Mr. Scranton of his right to appeal the termination decision and notified Mr. Scranton he had fifteen days to request a hearing before the City's Personnel Commission (Personnel Commission). The statement of termination further explained, if Mr. Scranton timely requested a hearing, the Personnel Commission would determine if the reasons for termination were sufficient. Mr. Scranton signed the document and left the meeting.

[¶16] On August 22, 2016, Mr. Scranton retained Ms. Woodhouse to request a hearing on his behalf and to represent him at his hearing before the Personnel Commission. Also on August 22, 2016, Ms. Woodhouse drafted a letter to the City requesting a hearing. Ms. Woodhouse's letter was received by the Personnel Commission on August 25, 2016—one day past the deadline. The Personnel Commission concluded Mr. Scranton's request for a hearing was not timely filed and denied Mr. Scranton's appeal of his termination.

[¶17] On September 9, 2016, Ms. Woodhouse filed a request for reconsideration by the Personnel Commission. The Personnel Commission did not grant reconsideration. On October 6, 2016, on Mr. Scranton's behalf, Ms. Woodhouse, through her partner, filed a petition for judicial review in district court. On February 13, 2018, the district court entered an order upholding the Personnel Commission's denial of Mr. Scranton's administrative appeal based on the untimely filing of the appeal.

[¶18] On August 20, 2018, Mr. Scranton filed a complaint against Ms. Woodhouse and her law firm (Appellees) alleging Ms. Woodhouse committed legal malpractice in failing to file the request for hearing by the deadline. In the complaint, Mr. Scranton alleged that although he was 68 years old at the time of his termination in 2016, he planned to retire at the age of 75 or 76. Further, Mr. Scranton alleged "as a direct and proximate result" of Ms. Woodhouse's professional negligence, legal malpractice, and breach of attorney-client contract, Mr. Scranton was "denied the chance to be reinstated" to his position. Mr. Scranton claims, as a result of Ms. Woodhouse's negligence in failing to timely file the request for an administrative hearing, he suffered $571,800 in lost wages and benefits.

[¶19] Following discovery, Appellees filed a motion for summary judgment on July 26, 2019. Appellees argued Mr. Scranton could not prevail in his malpractice claim because: (1) he did not have an expert witness to testify as to causation; (2) Mr. Scranton's damage claim was based upon speculation and, therefore, could not serve as a basis for a malpractice claim; and (3) even if Mr. Scranton was wrongfully terminated, the City's

discovery of after-acquired evidence of Mr. Scranton's material misrepresentations on the City employment application was a complete bar to his legal malpractice claim. Appellees attached affidavits, exhibits, and portions of depositions to their motion for summary judgment, including an affidavit from their designated expert, Ms. Woodhouse. Ms. Woodhouse's affidavit stated her conduct—failing to timely file a request for a hearing on behalf of Mr. Scranton—fell below the standard of care, but was not the proximate cause of Mr. Scranton's damages and Mr. Scranton would not have been reinstated to his position.

[¶20] In his opposition, Mr. Scranton contended primarily that summary judgment was not warranted because it was undisputed that Ms. Woodhouse's conduct was the proximate cause of Mr. Scranton's loss of his right to a hearing before the Personnel Commission. Additionally, Mr. Scranton asserted there were remaining genuine issues of material fact in dispute concerning whether Mr. Scranton would have obtained a better outcome if he had been given his opportunity for a hearing before the Personnel Commission. Mr. Scranton attached an affidavit, exhibits, and portions of depositions to his opposition. Mr. Scranton did not include an affidavit from his designated expert but included significant portions of her deposition. In Mr. Scranton's expert's deposition, she agreed she could not opine that Mr. Scranton would have gotten his job back if he had a hearing before the Personnel Commission.

[¶21] The district court granted Appellees' motion for summary judgment. The district court's written order did not provide a detailed analysis as it normally would have done because the court believed the parties would benefit from the issuance of an order more quickly.

## STANDARD OF REVIEW

[¶22] Our standard of review of orders granting summary judgment is concisely explained as follows:

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id*. The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*.

*Estate of Weeks by and through Rehm*, 2018 WY 112, ¶ 15, 427 P.3d 729, 734 (Wyo. 2018) (citing *White v. Wheeler*, 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017) (quoting *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 46, 395 P.3d 167, 178–79 (Wyo. 2017))).

[¶23]  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P 56(a).  This Court must use the same materials and follow the same legal standards as the district court. *Tozzi v. Moffett*, 2018 WY 133, ¶ 11, 430 P.3d 754, 759 (Wyo. 2018).  To prevail, the movant must first establish a prima facie case for summary judgment. *Halling v. Yovanovich*, 2017 WY 28, ¶ 21, 391 P.3d 611, 619 (Wyo. 2017).  A prima facie case has two elements: (1) "The establishment of a legally required rebuttable presumption," and (2) "A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 27, 403 P.3d 1033, 1044 (Wyo. 2017) (citation omitted). "When the moving party does not have the ultimate burden of persuasion, it establishes a *prima facie* case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim." *Gowdy v. Cook*, 2020 WY 3, ¶ 22, 455 P.3d 1201, 1207 (Wyo. 2020). Once the movant meets the initial burden, the opposing party must establish "a genuine issue of material fact exists" to defeat the motion. *Halling*, ¶ 21, 391 P.3d at 619 (citation omitted).  When deciding if a genuine issue of material fact exists, we must keep in mind "the actual quantum and quality of proof necessary to support liability." *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 12, 74 P.3d 152, 158 (Wyo. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).  In ruling on a motion for summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.*  No genuine issue exists if the evidence presented in an opposing affidavit "is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party applying the applicable quantum of proof. *Id.*

## *DISCUSSION*

[¶24] There is no dispute that Ms. Woodhouse's failure to request an administrative hearing for Mr. Scranton fell below the standard of care.  Mr. Scranton asserts Ms. Woodhouse is not entitled to summary judgment on his legal malpractice claim against Ms. Woodhouse because there are disputed issues of material fact regarding whether Ms. Woodhouse's malpractice caused him injury.  Mr. Scranton argues expert opinion on the likelihood of success of a hearing before the Personnel Commission is not proper. Appellees contend Mr. Scranton's expert's opinions did not satisfy his burden to show he would have been successful at the administrative hearing before the Personnel Commission.  We conclude the district court correctly granted Appellees summary

judgment because Mr. Scranton's expert's opinions failed to establish that there was a genuine issue of material fact on causation.

[¶25] This Court has previously established the well-settled elements of a claim for attorney malpractice. The necessary elements of an attorney malpractice action are described as follows:

> To prevail on an attorney malpractice claim, the plaintiff must prove: (1) the accepted standard of care in the legal profession; (2) the attorney's conduct departed from that standard; and (3) the attorney's conduct was the legal cause of the plaintiff's injuries. *Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo. 1993). An attorney is "held to that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming." *Id.* at 1250. To establish (1) the applicable standard of care, (2) whether there was a breach of that standard, and (3) whether the breach was the proximate cause of the injuries, a party will typically need to present expert testimony. "Expert testimony is necessary because most lay people are not competent to pass judgment on legal questions." *Id.* at 1249; *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo. 1995). We have recognized that expert testimony may not be necessary only "when a lay person's common sense and experience are sufficient to establish the standard of care." *Bevan v. Fix*, 2002 WY 43, ¶ 40, 42 P.3d 1013, 1026 (Wyo. 2002).

*Tozzi*, ¶ 36, 430 P.3d at 764. The general rule in a malpractice claim is that "expert testimony is necessary to demonstrate . . . the causation element." *Id.* n.1. To prevail in a legal malpractice case, the "client must employ another attorney to prove the underlying action would have been successful . . . ." *Horn v. Wooster*, 2007 WY 120, ¶ 9, 165 P.3d 69, 72 (Wyo. 2007). The damages available to an aggrieved client from a negligent attorney are the amount the client would have expected to recoup if his underlying action had been successful. *Id.* ¶ 15, 165 P.3d at 74.

[¶26] The only element of legal malpractice at issue in this case is whether Ms. Woodhouse's conduct proximately caused Mr. Scranton's damages. Appellees agree Ms. Woodhouse's failure to timely request a hearing for Mr. Scranton fell below and breached the standard of care. In addition, Mr. Scranton did not directly contend that the common-sense exception to the expert witness requirement applied to this case.[1]

---

[1] Mr. Scranton suggests in his briefs that the use of expert evidence is limited in proving the third element of legal malpractice—causation. Mr. Scranton, however, did not expressly invoke the common-sense

7

[¶27] Appellees designated Ms. Woodhouse as an expert witness. Ms. Woodhouse is admitted to practice law in Wyoming, in the United States Supreme Court, in the Tenth Circuit Court of Appeals, and in the United States District Court for the District of Wyoming. Ms. Woodhouse began practicing law in 1977. Between 1978 and 2001, Ms. Woodhouse worked for the State of Wyoming as an Assistant Attorney General, Deputy Attorney General, and as the Attorney General, as well as an Assistant United States Attorney. In 2001, Ms. Woodhouse opened a private practice in Cheyenne, where she has practiced until the present. Since opening her firm in 2001, Ms. Woodhouse has had significant practice in administrative law, including employment disputes and licensing disputes before administrative agencies.

[¶28] In her affidavit, Ms. Woodhouse indicated she reviewed the City's investigative materials regarding Mr. Scranton, including audio-taped interviews with City employees. Based upon her review of the City's investigation, Ms. Woodhouse found the interviews "concerning" because of the allegations of Mr. Scranton referring to female employees as "sweetie, honey and dear[,]" one employee's report of Mr. Scranton's skateboard dream, and Mr. Scranton's misrepresentation that he earned an M.B.A. Ms. Woodhouse found the employees' interviews taken during the City's investigation to be detailed, consistent, and credible and, based upon those interviews she believed Mr. Scranton would not have been reinstated after a hearing. Ms. Woodhouse opined in her affidavit that, to a reasonable degree of certainty, Mr. Scranton would not have been reinstated to his position at the City had she and Mr. Scranton proceeded to a hearing before the Personnel Commission.

[¶29] Mr. Scranton designated Deborah Baumer as an expert witness. Ms. Baumer began practicing law in 1991. Ms. Baumer has practiced administrative law for over twenty years, primarily as a hearing examiner or hearing officer conducting contested case proceedings. Ms. Baumer was the Director of the State of Wyoming Office of Administrative Hearings for seventeen years. While acting as a hearing examiner or hearing officer, Ms. Baumer has conducted over 150 contested case proceedings involving employment terminations. Ms. Baumer, however, did not have any experience with cases before the Personnel Commission. Ms. Baumer acknowledged in her deposition that some of the rules governing proceedings before the Personnel Commission were different from those governing most of the employment cases she had heard as a hearing examiner or hearing officer. Specifically, Ms. Baumer agreed a terminated employee has the burden of proof

---

exception to the requirement of expert testimony to prove each of the elements of legal malpractice applied in this case, nor did Mr. Scranton provide grounds to support application of the common-sense exception. Moreover, this is not a case in which most lay people are competent to pass judgment on the likelihood that Mr. Scranton would have been successful before the Personnel Commission. Evaluation of the likelihood of success of a hearing before the Personnel Commission requires understanding of administrative procedures, rules of admissibility of evidence, rules of the Personnel Commission, and available legal defenses.

in hearings before the Personnel Commission, while in most of the employment hearings she had conducted the employer had the burden of proof.[2]

[¶30]  In her deposition, Ms. Baumer testified about numerous concerns she developed while reviewing the City's case supporting its 2016 termination of Mr. Scranton.  Ms. Baumer stated she had due process concerns regarding the City's notice of termination because it consisted of only a laundry list of reasons without specifying any conduct. According to Ms. Baumer, the independent investigative report did not recommend terminating or even suspending Mr. Scranton, and only recommended "additional training" for employees within the department.  Ms. Baumer testified she did not believe Mr. Scranton's manner of referring to female co-workers was conduct which rose to the level of termination. Ms. Baumer also was not bothered by Mr. Scranton's deliberate acceptance of a pay raise associated with the promotion without informing anyone in the City that he wished to decline the promotion, and referred to it as a "red herring" and not something that would likely result in termination.  Ms. Baumer found Mr. Scranton's explanation for claiming on his application that he had an M.B.A. to be credible.  Finally, Ms. Baumer explained that if Mr. Scranton had a hearing then the Personnel Commission could have found Mr. Scranton's versions of events and reasons for his conduct credible.

[¶31] Ms. Baumer opined, generally, that had Mr. Scranton been provided a hearing before the Personnel Commission and had the Personnel Commission believed Mr. Scranton's explanations for his conduct, the Personnel Commission could or would have imposed lesser discipline than termination, such as progressive discipline.  Ms. Baumer, however, could not provide an opinion as to the likelihood that Mr. Scranton would have been reinstated to his position with the City had he been permitted to have a hearing before the Personnel Commission.  Instead, Ms. Baumer indicated she would have to speculate on any outcome.  Ms. Baumer also did not provide an opinion as to the likelihood that the Personnel Commission would have reversed the City's termination of Mr. Scranton and have imposed a lesser form of discipline.

[¶32] The Court finds Appellees satisfied their initial summary judgment burden to establish a prima facie case that: (1) had Ms. Woodhouse's conduct not occurred and Mr. Scranton had been given his hearing before the Personnel Commission, he would not have been reinstated; and (2) Mr. Scranton's alleged damages were not caused by Ms. Woodhouse's malpractice.  Ms. Woodhouse was qualified to provide an expert opinion, her affidavit was based on personal knowledge and supported by admissible facts, and her affidavit clearly stated to a reasonable degree of certainty that Mr. Scranton would not have been reinstated to his position at the City even if he had a hearing.  Furthermore, Appellees demonstrated the lack of expert evidence on the essential element of causation presented

---

[2] This distinction is important because, if the party with the burden of persuasion does not sustain that burden by a fair preponderance of the evidence or if the evidence is in equipoise, then the party with the burden fails. *Little v. State Dep't of Workforce Servs., Workers' Comp. Div.*, 2013 WY 100, ¶¶ 34–35, 308 P.3d 832, 842–43 (Wyo. 2013).

by Mr. Scranton, which establishes a prima facie case for summary judgment. The burden, therefore, shifted to Mr. Scranton to demonstrate through expert testimony that Ms. Woodhouse's failure to timely file a request for a hearing caused Mr. Scranton's damages and created a genuine issue of material fact regarding causation.

[¶33] Mr. Scranton did not meet his burden because Ms. Baumer could not provide an opinion as to the likelihood that Mr. Scranton would have been reinstated to his position with the City if he was permitted to have a hearing before the Personnel Commission. *See Tozzi*, ¶¶ 40–41, 430 P.3d at 765 (expert did not render an opinion that the attorney's breach of the standard of care caused the client's claimed damages). Ms. Baumer is unquestionably qualified to provide her opinion, however, the most she could offer in her testimony was that the Personnel Commission could or would have imposed lesser discipline had they found Mr. Scranton's testimony at a hearing believable. Although Ms. Baumer described several potential concerns with the City's grounds for terminating Mr. Scranton, her testimony is not proof that "the underlying action would have been successful[.]" *Horn*, ¶ 9, 165 P.3d at 72. An opinion that Mr. Scranton would have been successful was necessary because Mr. Scranton's alleged damages are based entirely upon his being reinstated to his position.[3] Viewing the evidence through the prism of the applicable quantum of proof, we conclude Ms. Baumer's testimony was of insufficient caliber and quantity to allow the district court to find for Mr. Scranton on the issue of causation. Therefore, because Mr. Scranton did not establish the existence of a genuine issue of material fact concerning causation, Appellees are entitled to judgment as a matter of law.

[¶34] Our conclusion that Mr. Scranton failed to satisfy his burden to show Ms. Woodhouse's failure to timely file a request for a hearing caused Mr. Scranton's damages is supported by the after-acquired evidence doctrine. In many jurisdictions, the after-acquired evidence doctrine is a defense to claims of wrongful termination.[4] The doctrine allows an employer to avoid liability and/or damages for a wrongful termination based upon the discovery of an employee's serious misconduct which would have resulted in the

---

[3] In defense of Ms. Baumer's failure to opine on the likelihood of success before the Personnel Commission, Mr. Scranton argued primarily that expert opinion on the potential outcome in his Personnel Commission hearing was not proper and the issue of what would have happened at the Personnel Commission should be left for the trier of fact. Mr. Scranton relied heavily on the case of *Chocktoot v. Smith*, 280 Ore. 567, 571 P.2d 1255 (Ore. 1977). The *Chocktoot* case was primarily concerned with distinguishing the functions of a jury and a judge in a legal malpractice claim. That case did not involve the issue of the necessity of expert opinion on causation. Moreover, Mr. Scranton's argument for limiting expert opinion evidence on causation does not present grounds which sufficiently support this Court overruling our general rule that expert evidence is required to prove the underlying action would have been successful.

[4] We have found just one case where the after-acquired evidence defense was invoked as a defense in an attorney malpractice claim. *See, Katz v. Crowell*, 302 Ga.App. 763, 765–67, 691 S.E.2d 657, 659–60 (Ga. 2010) (although the court applied the after-acquired evidence defense as a potential defense to malpractice damages of back pay, it concluded the attorney failed to prove the existence of after-acquired evidence of wrongdoing).

employee's termination. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356, 115 S.Ct. 879, 883, 130 L.Ed.2d 852 (1995). In *McKennon*, the employer discharged Ms. McKennon due to her age. Ms. McKennon sued pursuant to the Age and Disability Employment Act (ADEA). *Id*. at 354, 115 S.Ct. 883. During discovery, the employer learned Ms. McKennon had engaged in misconduct while still an employee with them, which would have led to her discharge. *Id*. at 355, 115 S.Ct. 883. The Supreme Court held this after-acquired evidence of wrongdoing could not shield the employer from liability under the ADEA but may be relevant to damages. *Id*. at 356–61, 115 S.Ct. 883–86. The Court further explained: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id*. at 362–63, 115 S.Ct. 886–87.

[¶35] The logic of the after-acquired evidence doctrine has been followed by numerous courts. *See e.g. Ricky v. Mapco, Inc.*, 50 F.3d 874 (10th Cir. 1995) (where an employee prevailed in the liability phase of an age discrimination suit against his employer, but was denied damages because the employer discovered the employee had committed acts of sexual harassment against his secretary); *Wallace v. Dunn Constr. Co., Inc.*, 62 F.3d 374 (11th Cir. 1995) (after-acquired evidence doctrine applied to limit damages in an equal pay act claim, where the employer learned during discovery that employee had lied on her employment application by failing to disclose a prior criminal conviction); *Armani v. Maxim Healthcare Services*, 53 F.Supp.2d 1120 (D. Colo. 1999) (summary judgment was granted to the employer on an employee's promissory estoppel claim because employer discovered employee lied about his criminal record and his education on his resume); *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547–50 (Colo. 1997) (after-acquired evidence defense may be a complete bar to employee's breach of implied contract and promissory estoppel claims).

[¶36] In this case, there is no dispute that Mr. Scranton's employment application included inaccurate information and failed to disclose negative work history. It is also not disputed that the City discovered the false representations after he was terminated and that he would have been terminated for the false representations. Mr. Scranton did not accurately describe the reasons he left several previous positions and did not disclose he was asked to leave several positions in the past. In other words, the City would have had available the after-acquired evidence defense against Mr. Scranton as a bar to the recovery of damages. The availability of the after-acquired evidence defense to the City provides strong support for Ms. Woodhouse's opinion that Mr. Scranton would not have been reinstated and he would not have recovered any damages. Additionally, the after-acquired evidence doctrine supports Ms. Baumer's inability to opine as to the likelihood that Mr. Scranton would have gotten his position back with the City had he been permitted to have a hearing before the Personnel Commission.

## *CONCLUSION*

[¶37] The district court properly granted summary judgment to Appellees. Appellees' expert's opinion satisfied their burden by demonstrating Mr. Scranton would not have been successful in his hearing before the Personnel Commission. Mr. Scranton's expert's opinion, however, failed to satisfy his burden to prove Ms. Woodhouse's conduct proximately caused Mr. Scranton's damages. Mr. Scranton's expert could not opine on the likelihood of success had Mr. Scranton been given a hearing before the Personnel Commission.

[¶38] Affirmed.